JOHN HAMRAH AND DONALD EMERSON, TRADING AS HAMRAH BROS., PLAINTIFFS-APPELLANTS, v. ALBERT CLEMENTS AND EDMUND CLEMENTS, DOING BUSINESS AS CLEMENTS BROS., DEFENDANTS-RESPONDENTS.

Argued November 7, 1949—Decided December 12, 1949.

*Mr. Samuel A. Gennet* argued the cause for the appellants (*Messrs. Gennet & Rafner,* attorneys).

*Mr. Addison C. Ely* argued the cause for the respondents (*Messrs. Snevily & Ely,* attorneys).

The opinion of the court was delivered by

ACKERSON, J. This is an action in tort brought in the Superior Court, Law Division, to recover damages caused by a fire alleged to have resulted from the negligence of the defendants in installing an oil burner and its connections in the existing furnace in the plaintiffs' building. Judgment having been entered in favor of the defendants upon the return of a verdict of no cause of action, an appeal was taken to the Appellate Division of the Superior Court and, while pending there, the matter was certified here on our own motion pursuant to *Rule* 1:5–1(a).

The only points argued for reversal are (1) error on the part of the trial court in refusing to charge that the doctrine of *res ipsa loquitur* applied in the case, and (2) error in refusing to submit to the jury the question of control of the furnace at the time of the fire. Both propositions were made the subject of specific requests to charge, but, as will presently appear, our conclusion with respect to the first point is dispositive of this appeal.

The record discloses that the plaintiffs, trading as partners under the firm name of Hamrah Bros., conducted a rug cleaning and storage business in a building owned by them in Plainfield, New Jersey. They contracted with the defendants, trading as Clements Bros., whereby the latter agreed to convert the furnace in the building from coal to oil burning. The furnace was located in the middle of the structure in a room about 20 by 25 feet in size which also contained racks upon which rugs were stored; there was no cellar in this part of the building. The rear section of the building was used in the washing and cleaning of rugs whereas its front section was devoted to storage purposes. The conversion job was subcontracted to one Fred Malpere but his work was

under the supervision and control of the defendants. Mr. Malpere began work on December 11, 1945, and at approximately six o'clock that evening had nearly completed the installation of the oil heating unit. All that remained to be done the following day was to place an iron pipe underneath the floor to lead from the oil supply line in the wall to the oil burner. In the meantime a temporary hookup to accomplish this purpose was installed by the use of copper tubing. This was done because the plaintiff, John Hamrah, requested that the burner be put in operation that night (which was a cold one) so that a two inch water main on the premises would not freeze and burst.

The furnace was put into operation by Mr. Malpere, and before leaving the premises with the plaintiffs at about 6:15 P. M. that day, he and his men checked the controls on the furnace and tested the amount of oil flowage. He told the plaintiff, John Hamrah, that the thermostat had been set at 55 degrees and that the oil burner was running satisfactorily. Hamrah was shown how to regulate the thermostat and, as he was to return later, he promised to call Malpere if any difficulty was encountered.

Around 8 o'clock John Hamrah and his office manager returned to the building to see if the oil burner was operating and, as testified by Hamrah, left the premises soon after ascertaining this fact without having touched any of the controls or having otherwise interfered with its operation. Several hours later, about midnight, a fire was discovered which was confined mainly to the rear of the building in and around the furnace room causing considerable damage to the building and its contents. The front of the building was relatively untouched by the fire.

The cause of the fire is unknown. Plaintiffs did not know how it originated. An officer of the fire department who was present during the fire and who assisted in an investigation immediately after it was extinguished was unable to determine the cause. Plaintiffs' expert, Chester Webster, a heating engineer, who made an investigation twelve days after the fire, advanced four theories or possibilities as to how it

might have started, but concluded by frankly stating that he could not say what caused it.

In this situation the plaintiffs sought the benefit of the doctrine of *res ipsa loquitur:*

"This principle is that when through any instrumentality or agency under the management or control of a defendant or his servants there is an occurrence, injurious to the plaintiff, which, in the ordinary course of things, would not take place if the person in control were exercising due care, the occurrence itself, in the absence of explanation by the defendant, affords *prima facie* evidence that there was want of due care." *Mumma v. Easton & Amboy R. R. Co.,* 73 *N. J. L.* 653, 658 (*E. & A.* 1905); *Grugan v. Shore Hotels Finance, etc., Corp.,* 126 *N. J. L.* 257, 262 (*E. & A.* 1940).

It will be observed that the principle thus defined is invocable only where it appears that the *instrumentality* or *thing* under the control of the party charged with liability, his agents or employees, was the agency that caused the mischief. *Wilson v. Public Service Coordinated Transport,* 126 *N. J. L.* 250, 254 (*E. & A.* 1940); 38 *Am. Jur. (Negligence),* § 300, *pp.* 996, 997, § 303, *p.* 1000.

Therefore, in the case *sub judice,* before the question of control could have become an issue, it was necessary for the plaintiffs to show that in all probability the installation of this oil burning unit in the existing furnace was the agency through which the fire started. The evidence, viewed most favorably for the plaintiffs, completely failed to establish this essential element of the principle which they attempted to invoke, and consequently there was no error in the court's refusal to charge with respect thereto.

Furthermore, where applicable, the most that the doctrine of *res ipsa loquitur* does is to afford *prima facie* evidence that there was lack of due care in the particular case, and call upon the person charged with responsibility therefor to come forward with explanatory evidence to rebut the inference of negligence. *Mumma v. Easton & Amboy R. R. Co., supra; Newark Electric Light & Power Co. v. Ruddy,* 62 *N. J. L.* 505, 509 (*Sup. Ct.* 1898); affirmed, 63 *Id.* 357 (*E. & A.* 1899).

■■ The record before us discloses that the defendants did not move for an involuntary dismissal or for a directed verdict and apparently the plaintiff's *prima facie* case was conceded. Defendants proceeded to put in their proof as to the installation and adjustment of the oil burner and the case was submitted to the jury on instructions that it was their province to determine what caused the fire and specifically whether or not it was due to negligence on the part of the defendants or their agent. Thus, on the proofs offered, the plaintiffs got all they could hope for from the charge and the verdict in defendant's favor was proper.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.