CARL HANSEN, PLAINTIFF-RESPONDENT, v. EAGLE-PICHER LEAD COMPANY, A CORPORATION OF OHIO, DEFENDANT-APPELLANT.

Argued September 24, 1951—Decided November 5, 1951.

134

Mr. *Elmer J. Bennett* argued the cause for the appellant (*Messrs. Carpenter, Gilmour & Dwyer*, attorneys).

Mr. *Samuel Weitzman* argued the cause for the respondent (*Messrs. Parsonnel, Weitzman & Oransky*, attorneys).

The opinion of the court was delivered by

ACKERSON, J. Plaintiff brought this action in the Superior Court, Law Division, to recover damages for injuries alleged to have been sustained when he was struck on the head by a piece of sheet metal while on defendant's premises as an invitee.

At the close of plaintiff's case the defendant rested without putting in any evidence and each party moved for the direction of a verdict (actually a motion for judgment) pursuant to *Rule* 3:50. Defendant's motion, made on the ground that there was no proof of negligence on its part which proximately caused the plaintiff's injury, was granted and judgment was accordingly entered for the defendant. On plaintiff's appeal the Appellate Division reversed, and, since one judge dissented, the present appeal by the defendant is before us as of right pursuant to *Rule* 1:2–1(*b*).

The determinative question presented on this appeal is whether or not plaintiff's proofs established a *prima facie* case of defendant's negligence requiring the submission of that issue for the jury's determination.

The evidence tended to establish the following pertinent facts: On January 7, 1948, the plaintiff, Carl Hansen, was one of eight or ten carpenters engaged in the completion of the interior of a large one-story building which his employer, Wigton-Abbott Company, an independent contractor, had undertaken to build for the defendant, Eagle-Picher Lead Company, as an addition to its plant. The building was then in the final stages of construction and was turned over to the defendant in May, 1948. Defendant is a manufacturer of paint products; its plant, located on premises off Blanchard Street in the City of Newark, covers an extensive area of buildings and grounds surrounded by a fence. Entrance thereto is obtained through a guarded gate, and all buildings, streets and roads within the fenced area are the private property of the defendant, closed to the general public. On the aforementioned day (January 7, 1948), the plaintiff, accompanied by Anthony Aiello, an apprentice carpenter, went to

the plant cafeteria during a scheduled rest period to have a cup of coffee. While walking back to the new building on one of the defendant's private roads, plaintiff was struck on the head—"just to the right of the top of the head"—by an object which caused the injuries for which damages are now sought.

At the time of the accident plaintiff had been walking, with Aiello on his right, in a general northerly direction toward the one-story building under construction which lay approximately 100 to 150 feet directly in front of them, and they were about 25 to 35 feet away from the side line of a five-story building described as a mill and warehouse which was situated on plaintiff's left or westerly side. The new one-story structure ran across the road and joined the higher building near its center, thereby forming an "L" or wing. The area immediately to plaintiff's right was an open space, but they were approaching a small building on that side where the contractor maintained a field office and next to this was defendant's machine shop.

The plaintiff, although sustaining a deep cut on his head, did not see what struck him; neither did Aiello who testified that he also was struck on the head by the same object causing his hat to be knocked off, and on turning around he saw a piece of galvanized sheet metal lying in the street alongside his hat. He had not observed this object in the street while he and plaintiff were walking, and assumed that this was the instrumentality which had struck them because it was the only object lying in the street after the occurrence. It was a straight strip of metal (not corrugated) three feet by two feet in size and one-sixteenth to one-eighth of an inch thick. Investigation of this article shortly after the accident revealed that "It still had blood on it."

In the trial court the plaintiff, as appears from his counsel's opening statement and the pretrial order, relied upon the doctrine of *res ipsa loquitur* to raise a *prima facie* inference of negligence. The trial judge in granting defendant's motion for judgment, ruled that the plaintiff was not entitled

to the presumptive effect of the aforesaid doctrine because there was no evidence from which it could be reasonably inferred that the defendant had control or management of the piece of metal claimed to have caused the injury complained of, nor that it fell or came from the five-story building he was passing at the time of the occurrence. In reversing the judgment below, the majority opinion of the Appellate Division held that the case was one of "circumstantial evidence" wherein the probabilities that the injurious agency came from the five-story building due to some cause for which the defendant was responsible, presented a jury question as to the latter's negligence.

The basis for this conclusion appears in the following excerpts from the majority opinion:

"The conclusion is almost irresistible that plaintiff's wound was caused by the piece of sheet metal and that it had been propelled from an upper floor, or roof, of the factory which plaintiff and Aiello were passing. * * * The four- or five-story building was part of defendant's paint plant. There is no .proof that any sub-contractor was working there, or that anyone, not an employee of defendant, was in or on the building. In the absence of such proof, a jury might have found that the defendant controlled the activities there carried on, and that the persons in the factory were agents and employees of defendant, at work within the scope of their employment. * * * Presumptions or inferences of this sort grow from common experience. * * * What seems to us a probable explanation of the occurrence is that an employee of defendant, intending to forward defendant's work by getting the sheet metal out of the way, carelessly threw it from the window. * * * The proofs were such that the jury might deem that a preponderance of the probabilities supported the thesis of defendant's negligence."

We approach the solution of the problem before us by observing that the mere showing of an accident causing the injuries sued upon is not alone sufficient to authorize an inference of negligence; negligence is a fact which must be shown; it will not be presumed. Indeed there is a presumption against it and the burden of proving the charge of negligence contained in the complaint is upon the plaintiff and must be sustained by proof of circumstances from which

defendant's want of due care is a legitimate inference. It is a substantial right of defendant that plaintiff be required to bear this burden. *McKinney v. Public Service Interstate Transp. Co.*, 4 *N. J.* 229, 241 (1950); *Oelschlaeger v. Hahne & Co.*, 2 *N. J.* 490, 494 (1949); *Glicken v. Bergman*, 117 *N. J. L.* 306, 309 (*E. & A.* 1936); *Church v. Diffany*, 124 *N. J. L.* 100, 104 (*E. & A.* 1939).

It is in this field of legitimate inferences that the doctrine of *res ipsa loquitur* had its origin. This doctrine or maxim has had the consideration of our courts on many occasions and the principle involved is said to be rested upon the theory "\* \* \* that when through any instrumentality or agency under the management or control of a defendant or his servants there is an occurrence, injurious to the plaintiff, which, in the ordinary course of things, would not take place if the person in control were exercising due care, the occurrence itself, in the absence of explanation by the defendant, affords *prima facie* evidence that there was want of due care." It is a rule of evidence merely and not of substantive law. It is necessary to the application of the doctrine that those seeking the benefit of its presumptive effect must show that in all probability the direct cause of the injury (the instrumentality or thing causing the mischief) and so much of the surrounding circumstances essential to its occurrence were in the exclusive control of the defendant, his agents or servants. The requirement is based upon the theory that the means of obtaining information as to the condition and causes which brought about the occurrence are wholly within the defendant's possession and it is incumbent upon him to explain because of his peculiar knowledge. *Mumma v. Easton and Amboy R. R. Co.*, 73 *N. J. L.* 653, 658 (*E. & A.* 1905); *Den Braven v. Meyer Brothers*, 1 *N. J.* 470, 473 (1949); *Oelschlaeger v. Hahne & Co., supra, page* 494; *Hamrah v. Clements*, 3 *N. J.* 285, 289 (1949); *McKinney v. Public Service Interstate Transp. Co., supra, page* 242; *Menth v. Breeze Corporation, Inc.*, 4 *N. J.* 428, 436 (1950); *Kramer v. R. M. Hollingshead Corp.*, 5 *N. J.* 386, 389 (1950);

*Grugan v. Shore Hotels Finance, etc., Corp.*, 126 *N. J. L.* 257, 262 (*E. & A.* 1940) ; *Cicero v. Nelson Transportation Co., Inc.,* 129 *N. J. L.* 493, 496 (*Sup. Ct.* 1943).

As above noted, the majority opinion of the Appellate Division held that the instant case was solely one of circumstantial evidence and "the proofs were such that the jury might deem that a preponderance of the probabilities supported the thesis of defendant's negligence." On the record before us we are not persuaded to the latter view.

██ It is well settled that the existence of a possibility of a defendant's responsibility for a plaintiff's injuries is insufficient to impose liability. "In the absence of direct evidence, it is incumbent upon the plaintiff to prove not only the existence of such possible responsibility, but the existence of such circumstances as would justify the inference that the injury was caused by the wrongful act of the defendant and would *exclude* the idea that it was due to a cause with which the defendant was unconnected. While proof of certainty is not required, the evidence must be such as to justify an inference of probability as distinguished from the mere possibility of negligence on the part of the defendant." *Callahan v. National Lead Co.*, 4 *N. J.* 150, 154 (1950) ; *Woschenko v. C. Schmidt & Sons,* 2 *N. J.* 269, 277 (1949) ; *McCombe v. Public Service Railway Co.,* 95 *N. J. L.* 187, 189 (*E. & A.* 1920).

██ While it is probable that it was this piece of sheet metal which caused plaintiff's injuries, nevertheless, there is no evidence as to where it came from or that it was under the management and control of the defendant. The record discloses there were a number of subcontractors, including a sheet metal contractor, engaged in constructing the new building. Their employees, as well as those of the general contractor, used the roadway in the course of their employment and in going to and from the cafeteria on the grounds, and in so doing frequently passed the five-story building then occupied by the defendant and apparently had access thereto, for the plaintiff himself testified that he had gone

through it on the day before the accident when "we were going up [to the cafeteria] for our 10 o'clock coffee." There is no evidence whatever that any metal, such as struck the plaintiff, was used in any of the operations or activities conducted in this five-story building which was used by the defendant in the process of mixing paint pigments. Nor is there any proof that this building or any building under defendant's control had a sheet metal roof, or that this piece of metal bore any evidence of having been attached to or a part of the structure of any such building, or of the existence of a place on the latter from which the metal could have come.

As to the material used in the construction of the new building, the plaintiff relies upon the testimony of Harry K. Widmer, superintendent of construction for the general contractor, who testified on direct examination that he had no knowledge that a piece of metal, such as described, was used on the job, and that the new building had a "corrugated transite" roof which was composed principally of asbestos and cement, and was not sheet metal. However, later, still on direct examination, he qualified his statements by testifying that "there was sub-contractors and other men working and it was a lot of roof up there. I don't know what could have been on the building."

The size, shape and weight of this piece of metal clearly indicate that it was capable of being "scaled" through the air in a horizontal plane for a considerable distance. For all that appears it may have been thrown from the top of the uncompleted building, or from the ground level near the place where the plaintiff was walking, e. g., the roadway, the contractor's small office building, or the area adjacent thereto on the plaintiff's right, by any of the carpenters or other workmen not in the defendant's employ or under its control, and from there "scaled" or glided to where it struck the plaintiff.

To assume, on the record before us, that the object in question was thrown or fell from the five-story building and

further that such object was under defendant's management or control, would be to indulge in pure speculation which cannot legitimately support an inference of negligence,— probability, not possibility, is required for that purpose and plaintiff's evidence does not meet that requirement. *Woschenko v. C. Schmidt & Sons, Inc., supra; Callahan v. National Lead Co., supra; Watson v. Pennsylvania-Reading Seashore Lines*, 122 *N. J. L.* 614 (*Sup. Ct.* 1939).

The cases relied upon by plaintiff to support the theory that the rule of *res ipsa loquitur* is applicable in this case, of which *Sheridan v. Foley* (the falling brick case), 58 *N. J. L.* 230 (*Sup. Ct.* 1895) is typical, are all clearly distinguishable. The proofs in each case show either some direct evidence of control of the instrumentality involved or some evidence from which a permissible inference of control was logically drawn. As already noted, such evidence is lacking in the case *sub judice*.

The mere fact that defendant was in general control of the place where this unfortunate accident occurred is not sufficient, under the circumstances of this case, to invoke the rule of *res ipsa loquitur* as plaintiff would have us do. As already indicated, it was necessary for him to go further and show that in all probability the object which struck him and so much of the surrounding circumstances essential to the occurrence were in the exclusive control of the defendant, and this the plaintiff has failed to do. To disregard the latter requirement would result in an unwarranted extension of the doctrine of *res ipsa loquitur*. *Cf. Oelschlaeger v. Hahne & Co., supra; Den Braven v. Meyer Brothers, supra; Menth v. Breeze Corporation, Inc., supra, p.* 437. Without the benefit of that principle the plaintiff has failed to show any direct or circumstantial evidence from which negligence on the part of the defendant could be legitimately inferred.

While we thus conclude that the plaintiff has failed to establish a *prima facie* case of negligence, nevertheless the parties have briefed and argued a further point which, we are informed, was presented to but not decided by the

Appellate Division, and which we are asked to consider. The point is whether or not the trial court erred in excluding certain questions addressed by the plaintiff to his witnesses, Daniel J. McGinty and Albert D. Ready. These questions related to conversations alleged to have been had by these witnesses respectively with persons in the defendant's employ, the answers to which, plaintiff claims, would have amounted to admissions against the interest of the defendant corporation and would have supplied the missing proof of defendant's management or control of the object which caused the plaintiff's injuries.

The record discloses that the witness McGinty, "foreman carpenter" for the general contractor, Wigton-Abbott Company, testified that on the day of the accident, being informed that plaintiff had been injured, he went to the first-aid room on the premises and saw the plaintiff. Thereafter the witness went to the office of his employer, Wigton-Abbott Company, and there he saw "Lou Arthur" holding a piece of sheet metal which had blood stains on it. After it had been established by Mr. Arthur himself that he was the defendant's superintendent, but without any proof of the reason for or the occasion of Arthur's presence in the general contractor's office, Mr. McGinty, upon being recalled to the witness stand, was asked the following question by the plaintiff's attorney:

"Q. Now, Mr. McGinty, on January 7th, 1948, will you tell us what conversation you had with Mr. Arthur with reference to this piece of sheet metal he was holding in his hand on which there was blood—"

Defendant's objection to this question was sustained.

Plaintiff then called Albert D. Ready, investigator for an insurance company, who testified that in the course of investigating the accident he went to the defendant's plant and asked a guard "for the safety engineer, who is usually the man who handles accidents." The guard did not know who that person was, so the witness asked for the personnel manager who it appeared was Mr. Cavallo. The witness was

then asked to relate what Mr. Cavallo had said with reference to the piece of sheet metal. Defendant's objection to this question was likewise sustained by the court.

We think, under the circumstances revealed by the record, the trial court properly sustained the objections to the foregoing questions. The admissions of an agent bind a principal only when within the scope of the agency or when they are authorized by the principal. *Van Genderen v. Paterson Wimstett Thrift Co.,* 128 *N. J. L.* 41, 44 (*E. & A.* 1941). The rule is well settled that it is only words which are spoken, or acts which are done, by an agent in the execution of his agency which are admissible in evidence against the principal. This rule excludes all statements or narrations of an agent which, although relating to the business of his principal, were not made in execution of the agency. *Blackman v. West Jersey & Seashore R. Co.,* 68 *N. J. L.* 1, 3 (*Sup. Ct.* 1902); *Raffetto v. Warner Bros. Theatres, Inc.,* 121 *N. J. L.* 333, 335 (*Sup. Ct.* 1938); *Arenson v. Skouras Theatres Corp.,* 131 *N. J. L.* 303, 305, 306 (*E. & A.* 1943). The alleged statements of defendant's employees sought to be introduced are not shown to have been authorized or made during the performance of the duties of their employment; that they relate to the employer's business is not sufficient.

In order to render such declarations admissible, it must appear that they were made in the execution of the employer's business. *Van Genderen v. Paterson Wimstett Thrift Co., supra, p.* 44; *Arenson v. Skouras Theatres Corp., supra.* Plaintiff's proofs do not disclose that Lou Arthur made his alleged statement in the course of his employment; so far as appears his presence in the contractor's office may have been on a subject unrelated to his employer's business. There was no preliminary showing of why he was there or the reason for the alleged conversation as a basis for determining whether any admissions against his employer which might have appeared therein were made in the performance of the duties of his employment. Nor does it appear that any one but McGinty and Arthur were present on that occa-

sion. *Cf. Barcello v. Biel,* 137 *N. J. L.* 606 (*E. & A.* 1948); *Blackman v. West Jersey & Seashore R. R. Co., supra.* As to the conversation had with Mr. Cavallo relative to the piece of sheet metal, any statement made by him was clearly objectionable since it was not shown to have been within the scope of his employment as a personnel manager to make a statement on behalf of the defendant relative to the cause of the accident. *Cf. Drotar v. Pennsylvania R. Co.,* 120 *N. J. L.* 199, 201 (*Sup. Ct.* 1938). Nor were such statements admissible as part of the *res gestae.* It is clear that they were not made until some time after the accident occurred and were merely narrative of a past occurrence. Admissions of declarations upon this ground are permitted only if they are concomitant with the main fact under consideration and so connected with it as to illustrate its character. *Blackman v. West Jersey & Seashore R. R. Co., supra, p.* 2; *State v. De Paola,* 5 *N. J.* 1, 15 (1950).

The judgment of the Appellate Division of the Superior Court is accordingly reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For affirmance*—None.