90 N.J. Super. 9 (1965)
216 A.2d 11
WILLIAM KINGSLEY, ACTING DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JACK MILLER, INDIVIDUALLY AND T/A JACK MILLER'S ESSO STATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 1, 1965.
Decided December 30, 1965.
*10 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. Robert Tessler argued the cause for appellant (Mr. Irving N. Yankowitz, attorney).
Mr. Harold Leib, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals his conviction in the county district court for violating N.J.S.A. 56:6-2 (e), part of "An Act to regulate the retail sale of motor fuels" (L. 1938, c. 163, as amended), which provides:
*11 "No rebates, allowances, concessions or benefits shall be given, directly or indirectly, so as to permit any person to obtain motor fuels from a retail dealer below the posted price or at a net price lower than the posted price applicable at the time of the sale."
The trial judge, sitting without a jury, heard the matter on an agreed statement of facts. On January 30, 1964 two Motor Fuels Tax Bureau field representatives, Gross and Soriano, drove to defendant's service station in Gross' car and stopped at an "Esso" gasoline pump bearing the posted price of 29.9¢ a gallon. Gross told station employee Benacquista to "Fill it with Esso Regular." He put the pump nozzle on automatic, started to fill the tank, but then left to service another vehicle. Gross, fearful that there might be an overflow, approached another attendant, Wilson, and requested that he finish filling the tank. Wilson did so and then asked Gross, "What do you get  the double stamps or the two off?" Gross replied, "I guess I'll take the two off today."
Timely objection was taken to this exchange on the grounds that defendant was not present at the time of the conversation, there was no proof of his acquiescence or consent thereto, and so the conversation was not binding upon him. The court overruled the objection and permitted Gross to continue with his testimony.
Gross stated that he purchased about 7 1/2 gallons of gasoline at the posted price of 29.9¢, the pump indicator registering the sale as $2.24. Wilson said, "That will be $2.10," took three $1 bills from Gross and handed them to Benacquista, who went over to the outside cash register, returned and looked at the pump, and then gave Gross 90¢ change. Gross remarked, "Ninety cents change, right?" and Benacquista replied, "Right!" Gross and Soriano then identified themselves to the two attendants as Motor Fuels Tax Bureau field representatives.
The parties stipulated that if Soriano took the stand his testimony would be the same as Gross'. Plaintiff having rested, defendant moved for dismissal of the complaint on the following grounds, among others:
*12 (a) Notwithstanding the proceedings were in the form of a civil action, the Motor Fuels Act authorizes arrest and was quasi-criminal in nature, requiring proof that Wilson's act was authorized or directed by defendant;
(b) Defendant had no knowledge of the alleged violation; any conversation held out of his presence was not admissible;
(c) The statute, being in derogation of the common law, had to be strictly construed; no liability could attach thereunder because it did not specifically provide that the acts of an employee were binding upon the employer; and
(d) The statute did not provide that the allowance of a cash discount alone amounted to a violation.
Defendant's motion was denied.
Defendant testified Wilson had been hired on January 28 and started work on January 29, the day before the alleged violation; and that he had specifically instructed Wilson to sell gasoline at posted prices only, and to give green stamps to any customer requesting them. Defendant said he was not at the service station at the time of the incident, had no knowledge of the alleged violation, and any discount given was contrary to his instructions.
Wilson, in turn, testified that when Gross asked him to fill the tank, he told him he was busy, set the gasoline hose on automatic and left. When he returned Gross told him the charge was $2.10. He did not look at the pump but assumed the figure was correct, and he gave Gross 90¢ change from $3 tendered. Wilson said he started work January 29 and was instructed by defendant to sell gasoline at posted prices only and to give green stamps when requested. On cross-examination he testified he no longer worked for defendant, having voluntarily left his employ about six weeks following the alleged violation. He said he had been employed by various gasoline stations for some six years and was experienced in the handling of gasoline pumps.
Defendant's motion to dismiss was renewed at the close of the entire case and denied. The trial judge found defendant guilty and imposed the minimum penalty of a $50 fine and five-day suspension of license. N.J.S.A. 56:6-3.
*13 In his findings of fact the trial judge stated that he believed the testimony of Gross and Soriano, but not that of defendant and his witness Wilson. He specifically found that after Wilson had filled Gross' gas tank he had said, "What do you get  the double stamps or the two off?" and that Gross had paid $2.10 when the pump indicated $2.24. The judge further found that defendant "either acquiesced in the practice of rebate granting on gasoline sales by his employees or directly or indirectly informed such employees that rebates on gas sales by way of double stamps or 2¢ off posted pump price per gallon were to be offered his customers," and that defendant knew or should have known that his employees were indulging in giving rebates.
Defendant claims that the trial judge erred in allowing in evidence Wilson's inquiry of Gross, "What do you get  double stamps or the two off?" and Gross' reply, "I guess I'll take the two off today"  and this because he was not present, nor had he authorized his employees to allow any rebate or concession on gasoline sales. As to the latter the trial judge, as just noted, gave no credence to defendant's or Wilson's testimony. We see no reason to disturb the judge's appraisal of credibility. Abeles v. Adams Engineering Co., Inc., 35 N.J. 411, 427 (1961); R.R. 1:5-4 (b). Credibility was crucial to the resolution of the conflicting testimony. The Abeles court stated that in such circumstances "the conscientious conclusion of the trier of the facts as to which witnesses were more worthy of belief must be given great weight and accepted by the appellate tribunal unless clearly lacking reasonable support." In our view, the trial judge was entirely justified in concluding that the greater weight of the believable evidence warranted a finding that plaintiff's witnesses were telling the truth and that defendant and Wilson's version of the facts was not to be believed.
We find no merit in the claim that error was committed in admitting into evidence the interchange between Wilson and Gross. Wilson, a man who had been in the gasoline service station business for a number of years, was engaged in *14 defendant's business when he serviced the Gross car. His duties included not only the dispensing of motor fuel, but also determining the amount of the sale, receiving cash from the customer, and returning the proper change. It was in the course of servicing the car and taking Gross' money that Wilson asked the question above referred to and which clearly had to do with the amount of change Gross was to receive. The act was squarely within the scope of his employment, and therefore admissible against defendant. It need hardly be pointed out that Wilson's statement was not made sometime after the event and without relationship to his duties, as in Dudley v. Victor Lynn Lines, Inc., 48 N.J. Super. 457 (App. Div. 1958), reversed on other grounds 32 N.J. 479 (1960), on which defendant relies, but contemporaneously and in the course of discharging those duties.
It was not essential to admissibility that Wilson's statement had not been expressly authorized by defendant, for if what he did was an ordinary incident of his employment status, authority is readily to be implied. Cafone v. Spiniello Construction Co., 42 N.J. Super. 590, 605-606 (App. Div. 1956); cf. Rule 63(9) proposed by the N.J. Supreme Court Committee on Evidence. And here it might be observed that it challenges reason to believe that Wilson and Benacquista, both of whom were involved in the sale to Gross, had not been authorized by defendant to allow a 2¢ per gallon rebate. Wilson, who had begun work only the morning before, hardly would have undertaken personally to grant rebates. Benacquista was an employee of much longer standing. If they were granting rebates on their own, defendant would soon enough have known of the practice from checking his gasoline receipts against the gallonage sold as shown on the pump registers.
Defendant does not attack the validity of the Motor Fuels Act, sustained in Fried v. Kervick, 34 N.J. 68 (1961), as a reasonable exercise of police power and not arbitrary or discriminatory. He argued below, and suggests here, that the statute is quasi-criminal in nature. He stresses that it does not expressly make a retail dealer liable for violations committed *15 by an employee out of his presence, and should therefore be strictly construed.
The Motor Fuels Act is not criminal or quasi-criminal, but civil in nature. Sawran v. Lennon, 19 N.J. 606, 612 (1955); Department of Conservation and Economic Development v. Scipio, 88 N.J. Super. 315, 319-320 (App. Div. 1965), certification denied 45 N.J. 598 (1965). N.J.S.A. 56:6-3 provides for a penalty of a fine and suspension of license; only in default of payment of the fine does the act provide for imprisonment. A proceeding to revoke a liquor license for violation by a licensee of the Alcoholic Beverage Control Act has been held to be purely civil and disciplinary in nature, Butler Oak Tavern v. Division of Alcoholic Beverage Control, 20 N.J. 373, 378 (1956), so that any claim by defendant that the provision of N.J.S.A. 56:6-3 calling for a suspension of license makes the act quasi-criminal in nature, is without foundation.
The present action being a civil proceeding, the State did not have to prove its case beyond a reasonable doubt. A preponderance of the evidence sufficed.
The answer to defendant's contention that the Motor Fuels Act, being a penal statute, should be strictly construed may be found in State v. Meinken, 10 N.J. 348, 352-353 (1952), where the court said that the rule of strict construction applicable to the penal provisions of a statute "does not prevent a court from reading the statute in relation to the mischief and evil sought to be suppressed * * *. While a penal statute is not to be extended by implication or intendment, its clear implication and intendment is not to be denied. * * * [N]or is a construction of a penal statute that will aid in its evasion to be favored."
Clearly, we are dealing with a statute that is remedial in addition to being penal. When the Motor Fuels Act was amended in 1952 (L. 1952, c. 258) a legislative finding as to its remedial character was included in the preamble. It was there recited that the distribution and sale of gasoline at retail represents an integral part of the economic life of the *16 State, affecting the welfare and prosperity of its people, and that grave economic harm to the general welfare as well as to retailers may result if certain unfair trade practices are permitted and unrestricted. The Legislature declared it to be the expressed public policy of the State that the retail sale of gasoline is affected with and shall be impressed with the public interest in order to eliminate mentioned abuses, conditions and trade practices. And see Fried v. Kervick, above, 34 N.J., at page 79 et seq.
Certainly the evil sought to be remedied by N.J.S.A. 56:6-2 (e), the section defendant is charged with having violated, was the sale of gasoline below the posted price  an unfair method of competition. What the Legislature sought to curb was the potential for retail motor fuel price wars. It is inconceivable that it could only have had in mind gasoline service stations which were one-man operations, operated by only the owner-licensee. A construction such as defendant suggests, which would relieve the employer of liability in a situation like the present one, would make impossible the application of the statute to service stations with one or more employees. We therefore conclude, in light of what was said in Meinken, that the rule of strict construction does not prevent this court from reading the Motor Fuels Act in relation to the mischief and evil sought to be suppressed, and construing it so as not to favor its evasion.
We are not persuaded by defendant's argument that the conclusion reached by the trial judge was contrary to the weight of the evidence. Giving due regard to his opportunity to judge of the credibility of the witnesses, we conclude that the State proved its case by a clear preponderance of the believable evidence.
The judgment is affirmed.