**JOSEPH T. RYERSON & SON, INC.,**
Appellant,

v.

**H. A. CRANE & BROTHER, INC.,** Tow-
**motor Corp., and Allied Chem-
ical Corp.**

No. 17574.

United States Court of Appeals
Third Circuit.

Argued June 3, 1969.

Decided Oct. 31, 1969.

Bertram M. Light, Jr., Newark, N. J., for appellant.

Peter J. McDonald, George D. McLaughlin, Newark, N. J., argued for appellee H. A. Crane & Brother, Inc.

James T. Clare, Stryker, Tams & Dill, Newark, N. J., argued for appellee Allied Chemical Corp.

## OPINION OF THE COURT

Before KALODNER, VAN DUSEN and STAHL, Circuit Judges.

STAHL, Circuit Judge.

This diversity action, based on negligence, arises out of a fire which occurred in appellant Ryerson's building in Jersey City, New Jersey. There was no reliable indication as to the cause of the fire. Indeed, without objection, the court below charged the jury that "there has been no proof asserted as to the origin of the fire." Appendix (App.) 549a.

Plaintiff-appellant sued three parties for damages from the fire, appellee H. A.

Crane & Brother, Inc. (Crane), appellee Allied Chemical Corporation (Allied), and Towmotor Corporation (Towmotor). The jury rendered a verdict in favor of all the defendants.[1]

On the day of the fire, August 11, 1964, appellee Crane was engaged in repairing the roof of the Ryerson building. In so doing, Crane constructed an apparatus to raise and lower tar buckets from the ground to the Ryerson roof. The ground abutting the Ryerson building was owned by appellee Allied. Ryerson had received permission for Crane to make such use of the premises from Allied. The tar was heated to a temperature of 400° Fahrenheit while on the ground and then hoisted to the Ryerson roof for application.

On the same day Towmotor was engaged in repairing a forklift which belonged to Allied and was located on Allied's property. Appellant claimed that the employees of Towmotor used a flammable material to clean the forklift in close proximity to the fire used to heat the tar kettle.

Also at the time of the fire, and for a long time prior thereto, appellee Allied, whose property abuts the Ryerson building, had permitted combustible materials, including wooden boards, wooden pallets, paper, weeds and other trash, to accumulate on its premises near the Ryerson structure.

Appellant asserted that Crane was negligent in heating the tar near the litter on the Allied property, that Towmotor was negligent in using flammable liquids near the Crane fire and the Allied trash, and that Allied was negligent in permitting the litter to accumulate as a fire hazard. Further negligence on the part of Allied was alleged to have been its failure to prevent the spread of the fire from its property to the Ryerson building.

Despite these contentions, not only is there no evidence as to how the fire

---

1. Although Ryerson did not appeal the judgment in favor of Towmotor, appellant's action against Towmotor below has relevance to the issues involved in this appeal.

started but the parties are also in dispute as to where the fire started. The record leaves uncertain whether the fire began on the Allied property or in the Ryerson building. In addition, there was evidence of other causes of the fire. One of Crane's employees admitted to smoking on the job. (App. 352a, 361a.) On the day of the fire a plumbing contractor was working inside the Ryerson building using electric arc welding equipment. (App. 313a.) Ryerson's employees were permitted to smoke both inside and outside the building. (App. 45a.) Finally, there is testimony that an unidentified Ryerson employee stated that at the time of the fire he observed a spark or flame emanate from an electric box and ascend the wall or beam inside appellant's building. (App. 388a-390a, 393a, 394a, 403a and 408a-409a.)

Appellant requested that the jury be charged that regarding appellee Crane, the roofer, the doctrine of res ipsa loquitur was applicable, and regarding Allied, that an adjoining landowner has a duty to aid in the extinguishment of a fire if it starts on its premises. The court refused to so charge. Appellant's request for an extensive and detailed charge on the inferences permissible to be drawn from circumstantial evidence was also rejected.

■ Appellant moved for a new trial after a jury verdict for all three defendants on the ground that failure to give the requested charges was error.[2] The court below ruled against appellant on

all of these claims, without opinion. Ryerson appealed; we affirm.

*Was Appellant Entitled to the Requested Res Ipsa Loquitur Charge Against Appellee Crane?*

■ The Latin phrase res ipsa loquitur means "the thing speaks for itself." Prosser on Torts § 39 at 217 (3d ed. 1964). Application of the doctrine entitles plaintiff to a jury instruction that a finding of the breach of duty element in a negligence action may be based on inferences alone without direct proof.[3]

■ The law of New Jersey which controls this lawsuit generally requires the plaintiff to satisfy three elements for a res ipsa loquitur charge:

(1) The accident which produced the injury was one which ordinarily does not happen unless someone was negligent;

(2) The instrumentality or agency which caused the accident was under the exclusive control of the defendant; and

(3) The circumstances indicated that the untoward event was not caused or contributed to by an act or neglect on the part of the injured person. Gould v. Winokur, 98 N.J.Super. 554, 237 A.2d 916, 920 (Law Div.1968), aff'd per curiam, 104 N.J.Super. 329, 250 A.2d 38 (App.Div.), certification denied, 53 N.J. 582, 252 A.2d 157 (1969); Lorenc v. Chemirad Corp., 37 N.J. 56, 179 A.2d 401, 408 (1962).[4] See also Restatement (Second) of Torts § 328D(1) (1965).

2. *Additionally, although not presented to the trial court as grounds for a new trial, Ryerson now claims prejudicial error in the admission into evidence (over objection) of an out-of-court statement of an unidentified Ryerson employee. (See p. 10, infra.)*
   *While it would have been desirable for the trial court to have had an opportunity to consider this alleged error on the motion for a new trial, appellant's failure to raise the claim at that time does not, of course, bar him from asserting this ground on appeal provided objection to the evidence was made at trial, as was the case here. Kiernan v. Von Schaik, 347 F.2d 775, 777 (3d Cir. 1965). See*

3A Barron & Holtzoff, Federal Practice and Procedure § 1551 at 54 (Wright ed. 1958) and § 1551 n. 14 (Supp.1968).

3. The doctrine ordinarily does not permit the jury to infer causation. However, the jury may infer "causation" when all possible causes were in the exclusive control of the defendant. Gilroy v. Standard Oil Co., 107 N.J.L. 170, 151 A. 598, 600 (1930).

4. The *Lorenc* case pointed out that in products liability cases the second element of the rule relating to exclusive control has been modified. The court said:
   * * * Modern manufacturing, packing, shipping and marketing conditions,

Regarding the first element, we are not unmindful that this is a fire case and that fires often happen without negligence on the part of any person,[5] but we do not rest on this ground.

■ Focusing on the second element, we find that the appellant has failed to show that the instrumentality which caused the fire[6] was in the exclusive control of appellee Crane. The Restatement (Second) of Torts § 328D(1) (b) (1965) phrases the requirement to be that "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence. * * * "

Both the Restatement and the law of New Jersey contemplate that the plaintiff eliminate all other possible causes by a preponderance of the evidence. No such elimination is present here. Appellant itself attributed the cause of the fire to three different defendants, including Towmotor. (See note 1, *supra.*) The possibility of additional causes, *e. g.,* arc welding by the plumbing contractor inside the Ryerson building and the testimony of an electric spark emanating from inside the building, was not sufficiently disproved by the appellant to entitle the jury to find that any instrumentality of Crane's was the exclusive cause of the fire.[7] The operative effect

---

however, brought the realization that to hold strictly to the view that inferences of negligence became permissible only on proof of exclusive control of the injuring agency at the time of the mishap would largely destroy the efficacy of the principle. The result was a sensible and logical broadening so as to permit the inference where the total circumstances showed a probability that defendant's lack of due care while the agency was in his possession and control was responsible for the casualty, and eliminated the probability of efficient participation by some other cause. * * * Harper & James suggest that as generally applied the requirement for exclusive control "is more accurately stated as one that the evidence must afford a rational basis for concluding that the cause of the accident was probably 'such that the defendant would be responsible for any negligence connected with it.'" 2 The Law of Torts (1956) p. 1086. 179 A.2d at 408.

With respect to another possible element of the rule, the court said in *Gould:* * * * There is some conflict as to whether there is a fourth prerequisite— that knowledge of the actual facts be more accessible to defendant.

    *     *     *     *     *

Quite frankly this court thinks accessibility of knowledge is irrelevant because it relates more to the justice of a new rule of law based upon strict liability rather than to traditional notions of liability based upon fault, which notions have not yet explicitly been rejected in New Jersey. * * * 237 A.2d at 920–921.

5. Menth v. Breeze Corp., 4 N.J. 428, 73 A.2d 183, 186, 18 A.L.R.2d 1071 (1950) ; Lefeber v. Goldin, 17 N.J.Super. 422, 86 A.2d 287 (App.Div.1952); Appalachian Insurance Co. v. Knutson, 242 F. Supp. 226 (W.D.Mo.1965), aff'd per curiam, 358 F.2d 679 (8th Cir. 1966); The President Wilson, 5 F.Supp. 684, 686 (N.D.Cal.1933) ; Annot., 8 A.L.R.3d 974, 982, 993, 995, 1062 (1966).

6. It is not the fire which caused the injury but the "thing" or "instrumentality" which caused the fire, that is required to be under the control of the defendant. * * * Annot., 8 A.L.R.3d 974, 999 (1966).

  *See also* Menth v. Breeze Corp., note 5, *supra,* and Gilroy v. Standard Oil Co., note 3, *supra.* In *Menth* the court said:

  Mere possession of the premises and shed from which the fire spread is not a basis for the application of the *res ipsa loquitur* rule. Additionally, the instrumentality or thing causing the fire must be shown to warrant the application of the rule. 73 A.2d at 187.

7. It is necessary to the application of the [res ipsa] doctrine that those seeking the benefit of its presumptive effect must show that in all probability the direct cause of the injury (the instrumentality or thing causing the mischief) and so much of the surrounding circumstances essential to its occurrence were in the exclusive control of the defendant, his agents or servants. The requirement is based upon the theory that the means of obtaining information as to the condition and causes which brought about the occurrence are wholly within the defend-

of a res ipsa charge is to force a defendant, who usually knows more about the instrumentality allegedly causing the injury, to bring out all that he knows. In the manufactured products area, a plaintiff is customarily in the dark about the processes used in the making of the products which may not have met the appropriate standard of care. This is not our case. All the relevant events occurred in an area occupied by or observable to the appellant's agents. The policy in favor of the invocation of the res ipsa doctrine is not present here.

For the foregoing reasons we hold that appellant was not entitled to a res ipsa loquitur charge.

*Was It Error to Refuse Appellant's Requested Charge on Inferences Permissible From Circumstantial Evidence?*

■ Appellant contends that the trial judge erred in refusing a requested charge relating to circumstantial evidence and the inferences to be drawn from such evidence. The proposed charge, App. 581a, was not only extraordinarily long and complicated but also amounted to little more than a recitation of those portions of the evidence favorable to appellant, thinly draped in ostensibly impartial "whether or not" language.

The wording of a charge is peculiarly a matter for the trial judge.[8] The trial court is under no obligation to defer to the specific requests of the parties in determining the content of the charge to the jury where the substance of the requests has already been covered in other instructions.[9]

We recognize the importance in negligence cases of relating the law to the evidence in instructions to the jury, as this court has previously stressed. Atkinson v. Roth, 297 F.2d 570, 574 (3d Cir. 1961). Nor do we part from our prior holding that a "requested instruction, in accord with a party's contention, and consistent with evidence in the case, must be granted unless the subject matter has been adequately covered in the court's main charge." Richardson v. Walsh Construction Co., 334 F.2d 334, 338 (3d Cir. 1964).

Rather, in the circumstances here, because

[c]ounsel ordinarily have the right to argue to the jury their own conception of what reasonable deductions should be drawn from facts in evidence * * * it is not necessary to this end that the Court point out all the deductions that might reasonably be drawn from these facts.[10]

We are thus of the opinion that the charge given by the court below on the subject of circumstantial evidence, while couched in somewhat abstract language, adequately informed the jury of the relevant law and was not in error in the circumstances of this case.[11]

---

ant's possession and it is incumbent upon him to explain because of his peculiar knowledge. * * * Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 84 A.2d 281, 284 (1951).

8. New Amsterdam Casualty Co. v. Novick Transfer Co., 274 F.2d 916, 925 (4th Cir. 1960); Hansen v. Barrett, 186 F.Supp. 527, 532 (D.Minn.1960).

9. Cohen v. Western Hotels, Inc., 276 F.2d 26, 28 (9th Cir. 1960); Kaplan v. Haines, 96 N.J.Super. 242, 232 A.2d 840, 844–845 (App.Div.1967), aff'd per curiam, 51 N.J. 404, 241 A.2d 235 (1968); Borowicz v. Hood, 87 N.J.Super. 418, 209 A.2d 655, 658–659 (App.Div.), certification denied, 45 N.J. 298, 212 A.2d 170 (1965).

10. Keal Driveway Co. v. Car & General Insurance Corp., 145 F.2d 345 (5th Cir. 1944).

11. The court charged the jury as follows: The charge of negligence may be supported by direct evidence, persuasive proof, specific acts of negligence, or by direct and persuasive proof of facts and circumstances from which negligence may reasonably be inferred. There is no burden on the plaintiff to prove the charge of negligence by direct evidence. The proof of negligence, like the proof of any other fact, may be sustained by circumstantial evidence; that is, evidence of related facts and circumstances sufficiently persuasive to support a reasonably probable inference that a de-

*Was the Court Below in Error for Refusing to Charge the Jury That an Adjoining Landowner (Allied) Has the Duty to Aid in the Extinguishment of a Fire Which Spreads From Its Premises to the Property of a Neighbor and in Refusing Evidence Tending to Show Allied's Breach of Such Duty?*

Appellant cites as error the failure to instruct the jury (and the failure to permit some proffered testimony) on the duty of Allied, the adjoining landowner, to use due care in extinguishing the fire and preventing its spread to the Ryerson building. See Annot., 18 A.L.R.2d 1081 (1951).

■ We uphold the lower court's action on the following grounds. First, the court properly sustained objections to testimony which tended to show that Allied's employees did not immediately attempt to aid in extinguishing the fire burning on both Ryerson's and Allied's premises. Menth v. Breeze Corp., 4 N.J. 428, 73 A.2d 183 (1950), teaches that a prerequisite to such testimony is proof that the fire had its *origin* on the adjoining landowner's premises. Without this basis, never shown here, such testimony is irrelevant. Furthermore, the testimony sought by appellant that two unidentified persons were seen in Allied's doorway observing the fire when Ryerson employees first reached the scene, and that Allied personnel took no steps to fight the fire before the arrival of the fire department, was in fact both earlier and subsequently admitted into evidence without any limitation as to its purpose. (App. 29a-30a, 42a-43a, 268a.) Therefore, even if the court's refusal to permit such testimony at one point in the trial was error, it was nevertheless cured by the allowance of similar testimony at other times during the trial, and appel-

lant was not injured thereby. See I Wigmore, Evidence § 19 at 353 (3d ed. 1940); F.R.Civ.P. 61.

■ Second, the refusal of the court to charge that Allied had a duty to prevent the spread of the fire was proper. Such a duty would arise only if (1) the fire started on the Allied premises, and (2) Allied's agents had notice of the existence of the fire. As we have already noted, the proof fails to demonstrate that the fire started on the Allied property. Furthermore, the fire department was notified by Ryerson personnel immediately upon discovery of the fire (App. 68a, 78a) and arrived within four minutes. (App. 169a, 182a.) The only evidence tending to show that Allied had notice of the fire prior to the time the fire department was notified was (a) testimony by an Allied employee that he first saw the fire "a few minutes" before the fire trucks arrived (App. 216a), at which time he observed the fire to be on both the Ryerson and Allied premises (App. 234a-235a), with pieces of flaming tar descending from the roof of the Ryerson building to the ground; and (b) testimony by Ryerson employees that when they arrived at the scene they saw two unidentified persons in the doorway of Allied's building observing the fire. (App. 29a-30a.) There is no evidence, nor did appellant offer to prove, that these unidentified individuals had knowledge of the fire either before the fire department was notified or before the appellant's employees arrived on the scene. Thus the record fails to show that Allied had notice of the fire at a time significantly in advance of the arrival of the fire department. In such a situation, it cannot be said that Allied became subject to a duty to extinguish or contain the fire.[12]

---

fendant was guilty of negligence. Such evidence, although it may lack equality and absolute certainty, may be considered by you in your determination of the issues raised by the defendant's denial of negligence. App. 558a-559a.)

12. In B. W. King, Inc. v. Town of West New York, 49 N.J. 318, 327, 230 A.2d 133, 138 (1967), the New Jersey Supreme Court dealt with a fire that had unquestionably started in defendant's vacant building. The court defined the duty of

The New Jersey Supreme Court has articulated the duty of an adjoining landowner in the following fashion:

\* \* \* [A]n owner or occupant of premises *on which a fire accidentally starts* is liable for the communication of the fire to the premises of a neighbor only if he has been guilty of some negligence in connection with its origin or escape. (Emphasis added.) Menth v. Breeze Corp., *supra* 73 A.2d at 186.

The court went on to say in *Menth:*

It is the settled rule that the owner of property is not liable for the spread of a fire which is accidentally *started thereon* by the act of a stranger or by some other cause with which he is not connected, unless he is guilty of negligence in respect to the condition of his premises or in failing to prevent the spread of the fire, *after he has notice of the existence of the fire on his premises*. (Emphasis added.) *Id.* at 188.

We conclude on the basis of *Menth* that appellant's contentions on this issue are not meritorious. In the first quotation from *Menth*, New Jersey requires that before other related evidence becomes relevant, and before entitlement to the type of charge here requested, appellant must demonstrate that the fire

had its origin on Allied's premises. Moreover, as the second quotation shows, and as the court below charged the jury, App. 553a-554a, Allied must also have had notiice of the existence of the fire before it became subject to a duty to contain it. Since neither the origin of the fire nor Allied's notice of its existence were sufficiently shown, the requested charge was properly denied.

*Did the Lower Court Err in Admitting (Over Objection) an Alleged Statement Made by an Unidentified Ryerson Employee Concerning the Origin of the Fire?*

Appellant further claims as error the admission into evidence of a statement by an unidentified employee of Ryerson, testified to by Muirhead, a foreman of appellee Crane. Muirhead stated that on the day following the fire he visited the Ryerson plant site and one of appellant's agents, known to him to be a Ryerson employee but unknown by name, stated that a spark or flame from an electric box [13] ascended the wall or beam inside the Ryerson building.[14]

Muirhead further testified that this unidentified employee made the statement within the earshot of Ryerson's general superintendent, John Retterer. (App. 395a, 404a-405a.) Although Ret-

---

the landowner as requiring that he take "reasonable means" to prevent the spread of the fire. Ordinarily, the court held, such reasonable means require only that the appropriate municipal fire fighting agency be alerted by the landowner when he acquires notice of the fire's existence. Since, at most, only a few minutes elapsed between Allied's notice of the fire and the arrival of the fire department, we do not believe that a duty can be said to have existed for a long enough period of time to justify the requested charge.

13. There was testimony on behalf of appellant Ryerson that there was no electric box in the vicinity of the fire.

14. Muirhead—Cross
Q. Someone made a statement to you on your return?
A. One of those—
Q. Is that correct?
A. One of those Ryerson employees.

Q. How do you know it was one of Ryerson's employees?
A. The way the man was dressed, and I had seen him in the place there before. (App. 390a.)
\* \* \* \* \*
Muirhead—Recross
Q. Mr. Muirhead, you have discussed before your being in the Ryerson premises shortly after the fire and there were some people around whom you identified as employees of Ryerson, and one of these employees made a statement. Will you tell us what that statement was, sir?
A. Well, he stated that he seen a spark go up from one of these boxes, these electrical boxes, and went up the wall to the beam.
Q. Were there electrical boxes in the Ryerson plant?
A. Yes, to control these cranes and different things.
(App. 403a.)

terer was a witness, he was never questioned about the identity of this employee nor was he called to rebut Muirhead's testimony.[15] Appellant argues that its objection to the statement as hearsay should have been sustained. Appellees assert that the statement is admissible under Rule 63(9) of the New Jersey Rules of Evidence, adopted in 1967, which reads in pertinent part:

Vicarious admissions

A statement which would be admissible if made by the declarant at the hearing is admissible against a party if (a) when made it concerned a matter within the scope of a then existing agency, employment, or representative relationship * * *.

This rule does not require that before the statement is admissible it must be shown that the servant was authorized to make it but only that the statement be made as "an ordinary incident of his employment status." Kingsley v. Miller, 90 N.J.Super. 9, 216 A.2d 11, 13 (App.Div. 1965).[16]

Appellant refers to Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 145, 84 A. 2d 281, 287 (1951), and Carter v. Public Service Coordinated Transport, 47 N. J.Super. 379, 136 A.2d 15 (App.Div. 1957), as supporting its contention that Muirhead's testimony was improperly ad-

mitted. However, the pertinent comment of the committee which formulated the New Jersey Rules of Evidence states that:

Rule 63(9) (a) represents a departure from New Jersey law as represented by [the *Hansen* and *Carter* cases]. * * * The proposed Rule represents what is intended to be a more practical and enlightened point of view. It reflects the position taken in the more modern cases to the effect that statements made by an agent are admissible if they concern a matter within the scope of the agency.[17]

One of the reasons assigned by the New Jersey committee for the liberalization of the Vicarious Admissions Rule evident in Rule 63(9) (a) is that

the agent is more likely to be telling the truth in most instances when he makes an admission than when later he is summoned to give testimony against his employer. * * * [I]t has been traditional practice to permit a hearsay exception where the necessity is great and the reliability involved in an identifiable class of statements is adequate. It would seem that such requirements are met here.[18]

In the instant case the testimony that the maker of the disputed statement was

---

15. Muirhead was called as appellant's witness. Since his testimony came in during appellant's case-in-chief, appellant presumably could have recalled Retterer with greater facility than if the statement complained of had been part of the case-in-chief of one of the appellees.

16. Citing proposed New Jersey Rule 63 (9) (a).

17. Report of the New Jersey Supreme Court Committee on Evidence, March 1963 at 165.

Indeed, although not argued by the parties, it is not altogether certain that the statement involved in this case was inadmissible even under prior New Jersey law. See Arenson v. Skouras Theatres Corp., 131 N.J.L. 303, 36 A.2d 761, 762–763 (1944), where an out-of-court statement by a movie usherette to the theater manager, overheard by plaintiff, to the effect that liquid on a seat which alleged-

ly injured plaintiff had been applied to clean off some chewing gum was held properly admitted as made within the scope of employment.

18. Report of the New Jersey Supreme Court Committee on Evidence, March 1963 at 166. Accord, Uniform Rules of Evidence, Rule 63(9) (a) (1953); Model Code of Evidence, Rule 508 (1942). See also Proposed Rules of Evidence for the United States District Courts (Preliminary Draft), Rule 8–01(c) (3) (iv), 46 F.R.D. 161, 332 (1969), and comment thereto, stating:

The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction

a Ryerson employee is nowhere contested or contradicted in the record. Appellant's objection is that the statement is not shown to concern a matter within the scope of the employment relationship. We have no doubt, however, that an employee has a duty to report all he knows about a fire that occurs on his employer's premises. Statements of an employee reporting a fire, accidents and other incidents affecting his employer's business interests normally concern matters within the scope of the employment relationship.[19] Reporting information about the origin of a fire is part of an employee's general duty of fire prevention and detection clearly incident to his employment status.[20]

For the foregoing reasons we hold that under the circumstances of this case, Muirhead's testimony was properly admitted under New Jersey Rule 63(9) (a).

The judgment of the court below will be affirmed.

with the results, calls for generous treatment of this avenue to admissibility. Id. at 339.

19. *See* Kentucky-West Virginia Gas Co. v. Slone, 238 S.W.2d 476 (Ky.1951); Aren-

son v. Skouras Theatres Corp., note 17, *supra.*

20. *See* 34 Am.Jur., Master and Servant § 82 (1941).