**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID WEIL,
　　　　　　　*Plaintiff-Appellant*,

　　　　　v.

CITIZENS TELECOM SERVICES
COMPANY, LLC; FRONTIER
COMMUNICATIONS
CORPORATION,
　　　　　　　*Defendants-Appellees.*

No. 16-35813

D.C. No.
2:15-cv-00835-JLR

OPINION

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted June 5, 2018
Seattle, Washington

Filed April 29, 2019

Before: Jay S. Bybee and N. Randy Smith, Circuit Judges,
and John Antoon II,[*] District Judge.

Opinion by Judge N.R. Smith;
Dissent by Judge Bybee

---

[*] The Honorable John Antoon II, Senior United States District Judge
for the Middle District of Florida, sitting by designation.

# SUMMARY[**]

## Employment Discrimination / Hearsay

The panel affirmed in part and reversed in part the district court's summary judgment in favor of defendant employers in an employment discrimination action under Title VII, 42 U.S.C. § 1981, and the Washington Law Against Discrimination.

Reversing the district court's summary judgment on a failure-to-promote claim, the panel held that the district court erred in excluding on hearsay grounds a statement proffered by the plaintiff. The panel held that, under Federal Rule of Evidence 801(d)(2)(D), hearsay does not include statements offered against a party, made by that party's employee on a matter within the scope of that employee's employment, so long as the statement was made while the employee was still employed by that employer. There is no requirement that the declarant still be in the same position that resulted in the matter being within the scope of the employment relationship. The panel held that, properly considering the statement as admissible evidence of pretext, the plaintiff met his burden on summary judgment.

Affirming the district court's summary judgment on plaintiff's termination claim, the panel held that plaintiff failed to raise a genuine dispute of material fact as to that claim because he did not present evidence that he was performing satisfactorily or that defendants treated a similarly

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

situated employee who was not a member of plaintiff's protected class differently.

Dissenting in part, Judge Bybee wrote that the district court properly excluded the proffered statement because it was not within the scope of the declarant's employment when she made it after having been relieved of her hiring and promoting duties. Judge Bybee concurred in the majority opinion insofar as it affirmed summary judgment on the termination claim.

## COUNSEL

Terry A. Venneberg (argued), Gig Harbor, Washington; Kenneth R. Friedman, Friedman Rubin, Bremerton, Washington; for Plaintiff-Appellant.

Lindbergh Porter Jr. (argued), Littler Mendelson P.C., San Francisco, California; James G. Zissler and Breanne Sheetz Martell, Littler Mendelson P.C., Seattle, Washington; for Defendants-Appellees.

**OPINION**

N.R. SMITH, Circuit Judge:

Hearsay does not include statements offered against a party, made by that party's employee on a matter within the scope of the employee's employment, so long as the statement was made while the employee was still employed by that party. Fed. R. Evid. 801(d)(2)(D). Because the district court excluded such a statement proffered by Plaintiff David Weil on hearsay grounds, it erred in granting summary judgment to Weil's employers, Citizens Telecom Services and Frontier Communications (collectively, Frontier), regarding Weil's failure-to-promote claim. However, the district court properly granted summary judgment to Frontier on Weil's termination claim, because Weil failed to produce evidence that raised a genuine dispute of material fact as to that claim. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

I.

David Weil's employment by Frontier (and its corporate predecessors) began in 1999. In 2011, Weil was promoted to Call Center Manager of a Frontier call center. In his 2011 performance review, Weil was praised for his leadership skills and received high overall scores.

In September 2012, Weil became the interim acting director of the call center, reporting directly to L.H., the

Senior Vice President of Call Centers.[1] As Weil's supervisor, L.H. conducted Weil's 2012 performance review, which showed declines in several categories. Although L.H. provided positive feedback about Weil's leadership and initiative, Weil's overall performance rating, as well as his own self-rating, decreased from his 2011 ratings.

After naming Weil the interim acting director, Frontier began the process of hiring a permanent director. L.H. was the person responsible for filling the permanent director position. Frontier received roughly 150 applications, including one from Weil. Weil was among the 7 to 10 applicants Frontier considered qualified for the position. L.H. interviewed Weil and two other candidates, thereafter ranking him second out of the three. In January 2013, L.H. emailed her supervisor recommending that Weil be allowed to present materials to the broader team for consideration for the position.

On January 14, 2013, Frontier removed L.H. as Vice President and moved her into a specialized role. Her replacement, Becky Potts, took over responsibility for filling the director position and became Weil's direct supervisor. Potts reviewed materials from the hiring process prior to her appointment, including L.H.'s review of Weil and an email from L.H. giving him a strong review. However, Potts ultimately selected Jennifer Brown (a white woman) in March 2013, despite Weil's complaint alleging Brown was never

---

[1] L.H. is identified in the record, but she is not a party, nor was she deposed in this action. Because the court discusses facts concerning her employment record, L.H.'s full name is omitted.

interviewed for the position.**[2]** Brown had fifteen years of experience at Frontier, with five years of managerial experience. However, her 2012 performance rating was slightly lower than Weil's score for that year and, unlike Weil, she did not have a Bachelor's Degree (which was listed as a preferred qualification for the position).

On April 1, 2013, Weil was notified he had not been selected for the promotion. Also in April, Potts prepared a Development Action Plan (DAP) for Weil, which identified areas for improvement, and Weil agreed to follow through on several "action items." Later that month, Weil spoke with L.H., who was then working for Frontier in her new capacity. In his deposition, Weil described what L.H. told him as follows:

> She had made it a – that the statement saying that she felt I was qualified for the job. She tried to get me into the director role; had three things that were against me, and her exact verbiage – I remember this clearly – is 'You have three things going against you. You're a former Verizon employee, okay. You're not white. And you're not female.'

L.H. was later terminated in June 2013.

Weil failed to meet the DAP deadlines and complete action items. In June 2013, he was put on a Performance Improvement Plan (PIP) for a 60-day period to end on August

---

**[2]** In his deposition, HR director Kevin Mailloux could not recall whether Brown was ever interviewed.

26, 2013. The PIP outlined that Weil faced possible termination if his performance failed to improve.

Weil's 2013 mid-year performance review showed further declines from his 2011 and 2012 reviews. He met with Brown twice in early August to discuss his performance issues. Following these meetings, Brown sought Frontier Vice President Donna Loffert's support to terminate Weil. Frontier terminated Weil on August 15, 2013, prior to the end of his PIP.

Weil brought suit against Frontier under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Washington Law Against Discrimination, Wash. Rev. Code § 49.60.010 *et seq.*, for wrongful and discriminatory failure-to-promote and termination. After discovery, Frontier moved for summary judgment. In opposing summary judgment, Weil presented L.H.'s statement and argued that it precluded the grant of summary judgment, because it was direct evidence of employment discrimination or at least evidence of pretext. Frontier then filed a motion in limine requesting, in part, that the court exclude L.H.'s statement as inadmissible hearsay. Weil countered that the statement was not hearsay under Federal Rule of Evidence 801(d)(2)(D), asserting that L.H. made this statement in April 2013, when she was still a Frontier employee, though she had been moved to a different role with the company by that time.

The district court determined that the statement offered by Weil was inadmissible under Federal Rule of Evidence 801(d)(2)(D) for lack of foundation, because L.H. was not employed in the supervisor position at the time L.H. made the statement to Weil. After excluding the statement, the district

court then reviewed Weil's failure-to-promote claim. It assumed (without deciding) that Weil met his prima facie burden but concluded that, having excluded the statement, Weil failed to produce admissible evidence that Frontier's reasons for not promoting him were pretextual. Finally, the district court assessed Weil's wrongful termination claim and concluded that Weil had not presented a prima facie case. Weil appealed.

## II.

Because we may only consider admissible evidence when reviewing a motion for summary judgment, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773–75 (9th Cir. 2002), we take up the evidentiary issue first. Under the general rule of evidence, all relevant evidence is admissible unless, *inter alia*, the Federal Rules of Evidence provide otherwise. Fed. R. Evid. 402. Here, we determine whether the district court properly excluded otherwise admissible relevant evidence under Federal Rule of Evidence 801. We review the district court's construction of Rule 801 de novo. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). The district court misconstrued Rule 801(d)(2)(D) when it required Weil (as foundation for the statement) to show that L.H.'s statement related to a matter within the scope of her employment at the time the statement was made.

Under Federal Rule of Evidence 801(d)(2)(D), a statement is not hearsay and may be admitted against an opposing party if the statement "was made by the party's agent or employee on a matter within the scope of that

relationship and while it existed."**[3]** The Rule sets forth three elements necessary for admitting a statement that would otherwise be excluded as hearsay: (1) the statement must be made by an agent or employee of the party against whom the statement is being offered; (2) the statement must concern a matter within the scope of that employment relationship; and (3) the statement must be made while the declarant is yet employed by the party.**[4]** There is no additional requirement that the declarant must still be in the same scope of employment at the moment the statement is made. The Rule's language is unambiguous. The second element requires that the statement concern a matter that was at some time within the scope of the declarant's employment. The third element requires only that the statement be made while the declarant is yet employed; it does not require that the declarant still be in the same position that resulted in the matter being within the scope of the employment relationship.

With respect to the second element, a statement may concern a matter within the scope of employment—even though the declarant is no longer involved with that particular matter when the statement is made—so long as the declarant

---

**[3]** Unless otherwise stated, all references to the "Rule" refer to Federal Rule of Evidence 801(d)(2)(D).

**[4]** The dissent characterizes these three factors as "too broad" in contrast to the Second Circuit's reading, which it calls "too narrow." However, the Second Circuit reads the Rule as we do. *See Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 128–29 (2d Cir. 2005) ("In order to introduce evidence of an out-of-court statement as nonhearsay under Rule 801(d)(2)(D), a party must lay sufficient foundation by establishing (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." (internal quotation marks omitted)).

was involved with that matter at some prior point in his or her employment. *See In re Sunset Bay Assocs.*, 944 F.2d 1503, 1519 (9th Cir. 1991) ("[S]tatements need only *concern* matters within the scope of the agency; they need not be made within the scope of the agency.") (emphasis in original). Additionally, a matter may fall within the scope of a declarant's employment even though the declarant did not have final decision-making authority on that matter. *See Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1246 (9th Cir. 2010); *cf. Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986) (finding statements inadmissible in absence of evidence showing declarants were involved in discharge).

Our sister circuits have similarly focused the scope inquiry on whether the declarant was involved in a process leading up to a challenged decision, rather than focusing on whether the declarant was a final decision-maker. *See, e.g.*, *Carter v. Univ. of Toledo*, 349 F.3d 269, 275 (6th Cir. 2003) (focusing on "whether the declarant was involved in any of the critical appraisals of [plaintiff's] performance that preceded her leaving work[] – not whether the declarant was a direct decision maker") (first alteration in original, internal quotation marks omitted)); *Simple v. Walgreen Co.*, 511 F.3d 668, 670–72 (7th Cir. 2007) (holding that a declarant's statement was admissible under the Rule, because the declarant was "involved in the process that led up to [the hiring decision], by being consulted about the appointment"); *Yates v. Rexton, Inc.*, 267 F.3d 793, 802 (8th Cir. 2001) (recognizing that "it is not necessary that [the declarants] be the actual decision-makers" so long as they were involved in "a process leading to a challenged decision") (citing *EEOC v. Watergate at Landmark Condo.*, 24 F.3d 635, 640 (4th Cir. 1994)); *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1208 (11th Cir. 2013) (requiring foundation that the declarant

"participated–at least to some extent" in the company's hiring decision).**[5]**

Turning now to the third element, the Rule's legislative history and intent support our reading that the Rule requires only that the statement be made when the declarant is yet employed. When the Federal Rules of Evidence were enacted in 1975, Rule 801(d)(2)(D) excluded from the definition of hearsay a statement offered against a party made "by his agent or servant concerning a matter within the scope of his agency or employment, *made during the existence of the relationship*." (Emphasis added). The Rule, as it existed then, required that the declarant's statement be made while the employment relationship existed, not within a specific scope of that relationship.

In 2011, the Rule was amended to its current form. The advisory committee notes to the 2011 amendment were clear: "These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility." Fed. R. Evid. 801 advisory committee's note to 2011 amendment. Thus, the wording of the Rule has been

---

**[5]** The dissent cites to *Kidd* as being "nearly on all fours" with our case. There, HR manager Rolison made a statement to the plaintiff that the company refused to consider American candidates. The court found that the statement's admissibility turned on "the scope of Rolison's involvement in the decisionmaking process leading up" to the hiring decision. *Id.* at 1210–11. "If . . . Rolison was consulted by Mando's management (or otherwise included in the decisionmaking process)," his statement may be admissible. *Id.* at 1210. The court there held that "some kind of participation" must be shown, but that final decisionmaking was not necessary. *Id.* at 1208–10 (citing *Simple*, 511 F.3d at 672, *Yates*, 267 F.3d at 802). We merely apply that same rule here. Weil was required to (and did) lay foundation that L.H. was involved with and participated in the process leading up to the decision.

amended, but the substance of the Rule itself remains unchanged. The 2011 amendment did not add a requirement that the declarant maintain the same scope of employment at the time the statement is made; the Rule requires (as it always has) only that the statement be made "during the existence of the [employment] relationship." Fed. R. Evid. 801(d)(2)(D) (1975).

The agency principles underlying this statutory non-hearsay category also bolster this interpretation of the Rule. "Typically the [employee] is well informed about acts in the course of the business, the statements are offered against the employer's interest, and *while the employment continues*, the employee is not likely to make the statements unless they are true." 2 McCormick on Evidence § 259 (7th ed.) (emphasis added). Neither an employee's knowledge nor her loyalty to her employer disappears at the moment the employee's job description changes. Accordingly, so long as the employment relationship continues to exist, we can presume the declarant is unlikely to make damaging statements unless they are true, even if the declarant is no longer actively involved with the particular "matter" at issue. Consequently, "the predominant view [has been] to admit a statement by an agent if it concerned a matter within the scope of the declarant's employment and was made *before that relationship was terminated*." *Id.* (emphasis added).

To read the Rule otherwise could lead to absurd results. For instance, if a supervisor—just after being promoted—made a statement admitting to a discriminatory motive for terminating an employee the day before, the alternative reading of the Rule would exclude that statement, merely because the statement concerned a matter that was perhaps no longer within the scope of that supervisor's employment.

Such a reading disregards the agency principles on which the Rule is predicated and would potentially allow employers to avoid liability by merely changing employees' positions or narrowly redefining the scope of their employment. Accordingly, we read the third element of the Rule to require that the statement be made while the employment relationship still exists, without regard to the declarant's specific scope of employment at the time the statement is made.

Applying this unambiguous Rule, L.H.'s statement is admissible. Weil laid sufficient foundation to establish each of the three required elements. First, the proffered statement of Frontier's employee, L.H., was offered against Frontier. Second, the statement concerned a matter within the scope of L.H.'s employment. The statement concerned why Weil was not promoted to the director position.[6] Although L.H. did not make the final decision, she was significantly involved in the process leading to the decision—not only was L.H. responsible for filling that position while she was Vice President, but during that time she specifically considered Weil for the job, even conducting his performance review and interview. Third, the statement was made in April 2013 when L.H. was still employed by Frontier. Because all three elements of the Rule are met, the statement is admissible under Rule 801(d)(2)(D), and the district court erred in excluding it.

---

[6] The dissent appears to read L.H.'s statement as speaking to why Brown was hired and makes much of the fact that L.H. was demoted before Brown was considered and the final decision was made. However, L.H.'s statement concerned only why Weil was not hired and did not speak directly to Brown's hiring or her qualifications.

The dissent's arguments are misplaced when considering the admission of this statement. Those arguments instead focus on topics more appropriately addressed in cross-examination. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The dissent emphasizes that L.H. was involuntarily demoted from the hiring position, that Potts may have had good reasons for choosing Brown over Weil, and that the source of L.H.'s statement in this case is Weil's own deposition rather than from L.H. herself, because she was never deposed. These observations go directly to the weight of L.H.'s statement. However, they are misplaced in determining the statement's threshold admissibility under the Rule on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). On cross-examination, Frontier will have its opportunity to discredit and oppose the statement, but these issues do not determine a statement's admissibility.

## III.

We review a district court's grant of summary judgment de novo. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). "The [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "view the facts and draw reasonable inferences in the light

most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).

In reviewing motions for summary judgment in the employment discrimination context, a court must "zealously guard[] an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest*, 360 F.3d at 1112. "[V]ery little . . . evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a factfinder." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996) (internal quotation marks and citation omitted, last alternation in original).

Title VII prohibits employers from discriminating against any individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). We analyze Title VII claims, as well as § 1981 and state law employment discrimination claims, under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Surrell v. Cal. Water Serv.* Co., 518 F.3d 1097, 1105 (9th Cir. 2008); *Kastanis v. Educ. Emps. Credit Union*, 859 P.2d 26, 30 (Wash. 1993). First, the plaintiff must make out a prima facie case. *McDonnell Douglas Corp.*, 411 U.S. at 802. Once the prima facie case is made, a presumption of unlawful discrimination is created and the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its action. *Id.* If the defendant meets that burden, the plaintiff must produce evidence that the defendant's "proffered nondiscriminatory reason is merely a pretext for discrimination." *Dominguez-*

*Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).

## A. Failure-to-Promote Claim

Taking into consideration L.H.'s statement as admissible evidence, we proceed to review the district court's grant of summary judgment. The district court assumed—without deciding—that Weil established his prima facie case, but determined that Weil failed to produce evidence that Frontier's legitimate, nondiscriminatory reasons for not promoting him were pretext. The district court made that determination after erroneously excluding L.H.'s statement. When the statement is properly considered as admissible evidence of pretext, Weil meets his burden.[7]

As the district court did, we assume for the purposes of summary judgment analysis that Weil established his prima facie case. The burden then shifts to Frontier to produce a legitimate, nondiscriminatory reason for its decision not to promote Weil. Frontier points to various concerns about

---

[7] In opposing a motion for summary judgment, a plaintiff asserting a Title VII claim may either produce direct or circumstantial evidence that a discriminatory reason motivated the defendant's employment decision, or alternatively may establish a prima facie case under the *McDonnell Douglas* burden-shifting framework. *McGinest*, 360 F.3d at 1122. "[I]t is not particularly significant whether [a plaintiff] relies on the *McDonnell Douglas* presumption or, whether he relies on direct or circumstantial evidence of discriminatory intent to meet his burden. Under either approach, [the plaintiff] must produce some evidence suggesting that [the defendant]'s failure to promote him was due in part or whole to discriminatory intent . . . ." *Id.* at 1123. L.H.'s statement is evidence suggesting that Frontier's failure to promote Weil was in part discriminatory. Thus, Weil created a triable question of fact such that the grant of summary judgment was improper under either approach.

Weil's leadership abilities, identified in his performance reviews, as legitimate, nondiscriminatory reasons for not promoting Weil. The burden then shifts back to Weil to produce evidence that Frontier's reasons were pretextual.

Viewing the facts and reasonable inferences therefrom in the light most favorable to Weil, as we must on summary judgment, L.H.'s statement is evidence that Frontier's reasons were merely prextext. The statement suggests that Frontier discriminated against Weil on the basis of his sex and race when it chose not to promote him. Such evidence "creates a triable issue as to [Frontier's] motive in failing to promote [Weil], even if the evidence is not substantial." *Dominguez-Curry*, 424 F.3d at 1038 (internal quotation marks omitted).[8] Because Weil met his burden of producing evidence of pretext and creating a genuine dispute of material fact, the district court erred in granting summary judgment on Weil's failure-to-promote claim. Thus, we reverse summary judgment as to this claim.

## B. Termination Claim

The district court granted summary judgment to Frontier on Weil's termination claim, because Weil failed to produce evidence to support his prima facie case. After review, we conclude that the district court did not err in determining Weil did not present evidence that he was performing

---

[8] The district court acknowledged the significance of L.H.'s statement at the summary judgment phase: "Granting all reasonable inferences in favor of Mr. Weil, a factfinder could read [L.H.]'s statement to indicate that Mr. Weil's skin color and gender played a role in the decision not to hire him." Because this statement alone is sufficient evidence to create a triable issue as to pretext, we need not discuss Weil's other circumstantial evidence of pretext.

satisfactorily or that Frontier treated a similarly situated employee who was not a member of Weil's protected class differently.

In a termination claim, the plaintiff may make a prima facie case by offering proof that: (1) he belongs to a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated him differently than a similarly situated employee who does not belong to the same protected class. *McDonnell Douglas Corp.*, 411 U.S. at 802. The parties do not dispute the first and third elements. Weil is a member of a protected class, because he is a man of East Indian descent. And Weil suffered adverse employment action when he was terminated.

Reviewing the record in the light most favorable to Weil, he has not met the second element. Although the requisite level of proof necessary for a plaintiff to establish a prima facie Title VII case at the summary judgment stage "is minimal and does not even need to rise to the level of a preponderance of the evidence," *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), the plaintiff still must produce evidence, not just pleadings or argument. An employee's self-assessment of his performance, though relevant, is not enough on its own to raise a genuine issue of material fact. *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660 (9th Cir. 2002).

The undisputed evidence, including Weil's performance reviews and his own self-ratings, shows that Weil's performance was steadily declining from 2011 to 2013. Weil's 2013 mid-year review shows an objective total self-report score of 2.6 out of 5, which Weil admitted reflected performance that was unsatisfactory. Weil does not dispute

that he missed deadlines and failed to complete action items in his DAP, nor does he dispute that he was placed on a PIP to address his performance and warned that termination was a possible outcome if his performance failed to improve. On this record, Weil has not shown that his performance was satisfactory. Therefore, he has not met the second element.

Weil also failed to meet the fourth element. It is not enough for employees to be in similar employment positions; rather, the plaintiff and the comparator employee must be "similarly situated . . . in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). Employees are similarly situated if they have "similar jobs and display similar conduct." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Here, Weil failed to produce evidence of a similarly situated employee who displayed similar conduct. Although Weil introduced evidence that no white female directors were placed on PIPs or terminated during the relevant management period, Weil did not introduce evidence that any of those employees failed to meet deadlines and complete tasks or had steadily declining performance reviews.

## IV.

The judgment of the district court is **AFFIRMED** in part and **REVERSED** in part, and this case is remanded to the district court for further proceedings consistent with this opinion. Each party shall bear its own costs and fees.

BYBEE, Circuit Judge, dissenting in part:

Federal Rule of Evidence 801(d)(2)(D) provides an exclusion from hearsay for certain statements by a party opponent. In this case, Weil seeks to offer a statement he says his former supervisor, L.H., made to him concerning why he was not promoted by Frontier. Weil argues that L.H.'s statement is not hearsay because Weil is offering the statement against Frontier and it "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." FED. R. EVID. 801(d)(2)(D). The real nub of our disagreement is whether L.H.'s statement made in April 2013 was within the scope of her employment when she made the statement. The majority concludes that because L.H. had been involved in interviewing candidates (including Weil) in October 2012 for the position Weil says he was wrongfully denied, she was competent to declare that Frontier didn't promote Weil in March 2013 because he was male and not white. The district court concluded that Weil hadn't laid a sufficient foundation for admitting L.H.'s statement: Although L.H. had been involved in making hiring decisions at one time, Weil failed to show how L.H. knew why Weil was not promoted when she had been relieved of her hiring and promoting duties in January, the candidate ultimately promoted wasn't even interviewed until February, and the decision to promote was made by a committee in March.

The district court has this one right. L.H. surely knew something about the processes she was involved in. And she *might* have even known something about how the final decisions were made. But once she was excluded from the decisionmaking process in January, Weil had to offer *some* basis for her statement. Otherwise, the statement may be

nothing more than her uninformed opinion, a statement "made in [that employee's] capacity as wiseacre only." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 967 (5th Cir. 2016) (quoting *Staheli v. Univ. of Miss.*, 854 F.2d 121, 127 (5th Cir. 1988)).   Federal Rule of Evidence 801(d)(2)(D) is not only an exclusion from the hearsay rule, it is a powerful rule of attribution:   If admitted, L.H.'s statement becomes Frontier's statement, as L.H. is presumed to be speaking on behalf of her employer.

The district court correctly stated the law and did not abuse its discretion when it refused to accept Weil's version of what he said L.H. said without further foundation.   I respectfully dissent.[1]

I

In this section, I am going to begin with a brief recitation of the facts, with a focus on the timeline of the relationship between Frontier, L.H., and Weil, and including some facts omitted by the majority.   I will then review the district court's careful opinion and discuss the standard of review.

A

Frontier named Weil the acting director of the call center in September 2012, reporting to L.H.  In October 2012, L.H. began the process of hiring a new full-time director.   That same month, L.H. interviewed Weil and two other male candidates for that position, ranking Weil second. On January 14, 2013, the circumstances changed.   Frontier

---

[1] I concur in the majority opinion insofar as it affirms summary judgment on Weil's termination claim.  Maj. Op. at 17–19.

demoted L.H., moving her to a so-called "specialized role" where she was no longer in charge of hiring for the director position and where she no longer supervised Weil or any other employee. Less than five months later, on June 1, 2013, Frontier terminated L.H.

L.H. was replaced by Becky Potts, who became Weil's supervisor and took charge of hiring a call center director. In February 2013, Potts interviewed additional applicants, narrowing the field to four leading candidates including Jennifer Brown, a white woman.[2] In late March 2013, Potts, in consultation with Kevin Mailloux, a human resources director, and Donna Loffert, a vice president, hired Brown as the new call center director. Unlike Weil, Brown had over fifteen years of experience at Frontier, including five years of managerial experience, and she had "handled more than one call center for a period of time." Potts told her superiors by email that she recommended not promoting Weil because of his need to (1) develop proactive communication skills; (2) improve cross-functional collaboration; and (3) increase accountability, matters that had shown up on his 2012 employee performance review conducted by L.H. Potts noted in that email that L.H. had given Weil a "strong review (3.4)," but that L.H.'s evaluation "did agree to some of my concerns above." In August 2013, Brown—with support from Loffert and Mailloux—decided to terminate Weil due to his "inability to overcome . . . performance gaps." Mailloux added that he had favored terminating Weil due to concerns about his honesty and dependability. Weil filed this suit,

---

[2] The record does not disclose who the four leading candidates were but suggests that Weil was not one of the four, and thus that at least two of the four were not interviewed by L.H.

alleging failure to promote on the basis of race, color, and sex.

In opposition to Frontier's motion for summary judgment on his failure to promote claim, Weil presented the district court with only one piece of direct evidence in support of his theory that he was denied promotion because of his race and sex: an out-of-court statement allegedly made to him by L.H.[3] The only evidence in the record that L.H. made this statement comes from Weil's own deposition, which reads in relevant part as follows:

> Q:      At Frontier did anyone ever make any inappropriate comments to you regarding your race?
>
> Weil:   Not that I can recall, no.
>
> Q:      At Frontier did anyone ever make any inappropriate comments to you regarding your gender?
>
> Weil:   I'm not sure if it's inappropriate or not. There was a comment made by a former supervisor regarding race and gender, but I don't think it was inappropriate. It was more in the

---

[3] Curiously, Weil neither deposed L.H. nor obtained a declaration or affidavit from her. A deposition or statement might have been admitted as direct evidence, without the recourse to the hearsay exclusion in Rule 801. At the very least, a statement from L.H. might have laid a foundation for the admission of her supposed statement to Weil. We have no explanation for this failure.

context of explanation and it wasn't like she was saying it to me.

Q:      Was this –

Weil:   But it wasn't – I don't think that it was inappropriate – like an attack on me.

Q:      Was this [L.H.]?

Weil:   Yes, there was – it was her.  And I did have – yes, it was her.

Q:      And what did she say to you?

Weil:   She had made it a – that the statement saying that she felt I was qualified for the job.  She tried to get me into the director role; had three things that were against me, and her exact verbiage – I remember this clearly – is, "You have three things going against you.  You're a former Verizon employee, okay.  You're not white.  And you're not female."

Q:      When do you claim [L.H.] made this statement?

Weil:   It was in April.  I don't remember the exact day in April.

Q:      In April of 2013?

Weil:  Yes.

Q:     And [L.H.] had left the company by this time; is that right?

Weil:  No.

Q:     She had not been involved in the – in the decision, though, right?

Weil:  She was involved in the hiring process up until January.  After that she was not involved in the process.

Q:     Because she had moved to a different role, correct?

Weil:  Yes.

. . . .

Weil:  . . .  And I mean, if I take a look at, you, as far as another example may be [L.H.].  It's like she went from someone that had thousands of people reporting to her.  So all of sudden being moved into a specialized role where she had no one.  And I observed – to my observation.

Q:     And so you don't even know if that was voluntary to involuntary, do you?

Weil:  I know the – the move was involuntary.

Q:     How do you know that?

Weil:  Based on conversations that I had with [L.H.], the move was involuntary.

## B

The district court recognized that L.H.'s statement was critical to Weil's case: "Granting all reasonable inferences in favor of Mr. Weil, a factfinder could read [L.H.'s] statement to indicate that Mr. Weil's skin color and gender played a role in the decision not to hire him." The court correctly stated the rule, that L.H.'s statement was hearsay and could be admitted only if "it satisfies the carveout for admissions by party opponents" under Rule 801(d)(2)(D). Quoting our opinion in *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986), the court stated that "[t]his rule 'requires the proffering party to lay a foundation to show that an otherwise excludible statement relates to a matter within the scope of the agent's employment.'" The court found that L.H. made the statement in April 2013, that she was only involved in the hiring process until January 2013, and, "as Mr. Weil acknowledges, [L.H.] did not partake in that final decision."

The court then stated, again correctly and citing decisions from the Sixth and Seventh Circuits, that L.H.'s "lack of decision-making authority at the time she made the statement is not dispositive on whether the statement relates to a matter within the scope of her employment." *See Carter v. Univ. of Toledo*, 349 F.3d 269, 275 (6th Cir. 2003); *Nekolny v. Painter*, 653 F.2d 1164, 1171 (7th Cir. 1981). Nevertheless,

the district court held that Weil still had the burden to lay a foundation for L.H.'s statement.  Finding that Weil argued only that L.H. was "still employed" by Frontier in April, the court concluded that Weil's statement and evidence "lay no foundation regarding the scope of [L.H.'s] employment when she made the statement in question."  "Indeed, based on the evidence in the record, the court can reasonably infer only that the scope of L.H.'s employment in April 2013 was minimal."  On this basis, the court concluded that L.H.'s statement was hearsay and inadmissible.

## C

We review the district court's interpretation of the hearsay rule de novo and its decision to admit or exclude evidence as hearsay for abuse of discretion.  *Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117, 1122 (9th Cir. 2004).  The majority concludes that the district court incorrectly interpreted the rule and resolved the case on de novo review.  However, as I explain below, the district court stated the correct law.  The question before us is thus whether the district court abused its discretion in excluding the hearsay statement because Weil failed to lay an adequate foundation.

## II

The majority holds that the district court erred as a matter of law when it required Weil to lay additional foundation for L.H.'s April 2013 statement.  It holds that Weil laid a sufficient foundation by demonstrating two facts: first, that L.H.'s statement to Weil related to a matter that was "at some prior point" within the scope of her employment, and second, that L.H. was "still employed by Frontier" when she made the statement.  Maj. Op. at 9–10, 13.  The majority emphasizes

that Rule 801(d)(2)(D) requires only that "the statement be made while the employment relationship still exists, *without regard to the declarant's specific scope of employment at the time the statement is made*." Maj. Op. at 13 (emphasis added). According to the majority, the rule "does not require that the declarant still be in the same position that resulted in the matter being within the scope of the employment relationship," "only that the statement be made when the declarant is yet employed." Maj. Op. at 9, 11, 12.

According to the majority, Rule 804(d)(2)(D) is "unambiguous," both in its meaning and application. Maj. Op. at 9, 13. But for me, the majority's reading of Rule 801 is formulaic and its application to this case wooden. Other courts have recognized that "the law regarding this rule is 'somewhat muddled,'" *United States v. Bloom*, 846 F.3d 243, 256 (7th Cir. 2017) (internal marks and citations omitted), because the rule must be read differently "in employment cases in which the admission deals with hiring/firing/promoting/demoting-type decisions." *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 762 (7th Cir. 2003); *see also Williams v. Pharmacia, Inc.*, 137 F.3d 944, 950 (7th Cir. 1998) ("The precise reach of Rule 801(d)(2)(D) is sometimes difficult to discern, as there has been considerable debate about the justification for classifying vicarious admissions as non-hearsay.").

With all due respect, I believe the majority has missed a nuanced, but critical point: If it is admissible at all, L.H.'s statement is admissible against Frontier as evidence of Frontier's position only up until the point she was relieved of

her responsibilities in January 2013.[4]  L.H. told Weil he was qualified, she tried to get him the directorship, and he had three things going against him: he was a former Verizon employee, not white, and not female.  If Weil had attempted to introduce L.H.'s statement as evidence that Weil was not going to get the job *while L.H. was in charge*, then the statement is likely admissible against Frontier.  *See* 4 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 8:53 (4th ed. 2018) (Rule 801(d)(2)(D) "clearly endorses [admission] . . . where the speaker is himself the alleged tortfeasor.").  But Weil sought to introduce the statement as direct evidence that Frontier ultimately failed to promote him because of his race and gender.  "[D]irect evidence of employment discrimination is rare," and, "if believed, proves the fact of discriminatory

---

[4] I should note that the Second Circuit has adopted a formulation of Rule 801(d)(2)(D) that would limit the admission to statements "made during the course of the [agency] relationship that . . . relate[] to a matter within the scope of the agency." *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 129 (2d Cir. 2005) (quoting *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)).  In contrast, the majority elicits three elements from the rule: (1) the statement must be made by an agent or employee of the party against whom the statement is offered; (2) the statement concerns a matter within the scope of that employment relationship; and (3) the statement was made while the declarant was still employed by the party.  Maj. Op. at 9.  Elements (1) and (3) are redundant: "an employee" (1) is by definition one "still employed by the party" (3).

The Second Circuit's rule seems too narrow; the majority's too broad.  Here I am trying to offer a formulation between the two that might recognize an employee's competence to speak about historical facts—matters previously, but not currently, within the employee's scope of employment—but would recognize the limitations of the admission.  My view would avoid the majority's "absurd results" hypothetical.  *See* Maj. Op. at 12.

animus *without inference or presumption*." *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 662 (9th Cir. 2002) (internal citation and alteration omitted) (emphasis in original). The problem is that Weil himself admitted that L.H. was long out of the loop when she made the statement: She was demoted in January and replaced by someone (Potts) not previously involved in the hiring process. Potts interviewed candidates L.H. did not (including the successful candidate, Brown), consulted with management in meetings L.H. didn't attend, and hired Brown two months after L.H. was demoted. Nothing in that chain of events suggests that L.H. knew why, in March, Frontier passed over Weil and hired Brown.[5]

To be clear, I am not suggesting that the district court had to exclude L.H.'s statement—only that given the lack of a foundation Weil laid, it did not abuse its discretion in doing so. Even after L.H. was removed from her position, her statement to Weil might still be relevant if Weil had offered some foundation for how L.H. knew what she said to him. For example, if L.H. had said to Weil, "Becky Potts asked me to sit in on some discussions of the final candidates, and it was clear we were only going to hire a woman," we would

---

[5] The majority considers these facts relevant only to the *weight* accorded to L.H.'s hearsay statement and not to the threshold question of *admissibility*. Maj. Op. at 14. This is a misunderstanding of the hearsay rule: Because L.H.'s statement may only be admitted against Frontier if she was an employee who spoke on a matter within the scope of her employment relationship as defined by Rule 801(d)(2)(D), evidence that the scope of L.H.'s employment had narrowed by the time of the relevant events is essential to our determination of whether the statement fell within that scope—and accordingly, to whether the statement may be admitted or must be excluded under Rule 802. If the statement were admitted, these factors could again be relevant on the question of weight.

have a basis for admitting L.H.'s statement against Frontier. But L.H.'s statement, as related by Weil, not only is untethered to the final decision, but lacks any connection to the hiring of a new supervisor to make the decision, the additional candidate interviews conducted in January and February, and the final decision made in late March.**[6]**  As Weil himself candidly admitted, L.H. was "not involved in the process [after January]."

The district court's decision to insist on a proper foundation for L.H.'s statement was proper for an additional reason.  As the district court found, by April 2013, L.H.'s responsibilities at Frontier were "minimal."  In fact, less than two months later, L.H. was terminated.  Federal Rule of Evidence 801(d)(2)(D) is not only a rule about hearsay, it is a powerful rule of attribution.  It takes ordinary hearsay and makes the statement attributable to the employer.  At the heart of the rule is the law of agency, and the touchstone of agency is the consent of the principal and agent.  *See* FED. R. EVID. 801(b)(2)(D) 1972 advisory committee's note; MUELLER & KIRKPATRICK, *supra*, § 8:53 & n.1; 2 KENNETH S. BROWN ET AL., MCCORMICK ON EVIDENCE § 259 & nn.4–5 (7th ed. 2016); *see also* RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. c (Am. Law. Inst. 2006).  Like other agency

---

**[6]** The lack of a foundation for L.H.'s statement leaves us with an additional dilemma.  If L.H. "knew" Weil did not get the promotion on account of his race and sex because another Frontier official told her so, then we have a double hearsay problem.  In order to admit Weil's statement that L.H. told him that someone else told her, Weil would have to show, at the least, that every link in the hearsay chain satisfied Rule 801(d)(2)(D). *See Yates v. Rexton, Inc.*, 267 F.3d 793, 802 (8th Cir. 2001).  Since we know, by Weil's own admission, that L.H. was not involved in the decision to hire Brown instead of Weil, the possibility of double hearsay is quite real.

relationships, the scope of employment—its subject matter, duties, and rights—may be modified through agreement or otherwise. For that reason, the district court must require some foundation for the statement; it is not sufficient to show that the declarant was simply employed at the time the statement was made. FED. R. EVID. 801(d)(2) ("The statement must be considered but does not by itself establish the . . . scope of the relationship under (D)."). *See Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009) ("[N]ot everything that relates to one's job falls within the scope of one's agency or employment." (internal quotation marks and citation omitted)); *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("If it is to be contended that Gillis's statements represent the policy of BellSouth, . . . a court would have to determine by a preponderance of the evidence that Gilles was speaking as an agent of BellSouth *at the time he made these statements*. Nothing . . . supports such a conclusion. It is in reality nothing but the inadmissible opinion of Gillis." (emphasis added)).[7]

---

[7] In 1997 Rule 801(d)(2) was amended in response to the Supreme Court's decision in *Bourjaily v. United States*, 483 U.S. 171 (1987). That decision concerned the proof required to demonstrate a conspiracy for purposes of admitting a co-conspirator's statements pursuant to Rule 801(d)(2)(E). The Advisory Committee noted that the changes made clear that

> the contents of the declarant's statement do not alone suffice to establish a conspiracy in which the declarant and the defendant participated. The court must consider in addition the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or evidence corroborating the contents of the statement in making its determination as to each preliminary question.

We have long assumed that, out of loyalty, an employee "is unlikely to make statements damaging to his principal or employer unless those statements are true." *Nekolny*, 653 F.2d at 1172; *see* Maj. Op. at 12 ("so long as the employment relationship continues to exist, we can presume the declarant is unlikely to make damaging statements unless they are true"); *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992); *Joseph T. Ryerson & Son, Inc. v. H.A. Crane & Bro., Inc.*, 417 F.2d 1263, 1270 (3d Cir. 1969) ("It has been traditional practice to permit a hearsay exception where the necessity is great and the reliability involved in an identifiable class of statements is adequate. . . . [T]he agent is more likely to be telling the truth in most instances when he makes an admission . . . ." (citation and internal alteration omitted)); FED. R. EVID. 801 1972 advisory committee's note ("[F]ew principals employ agents for the purpose of making damaging statements . . . ."). The district court noted that L.H. had reason to be unhappy with Frontier: she had been relieved her of all supervisory responsibilities. In Weil's own words, "the move was involuntary," and "she went from someone that had thousands of people reporting to her. So all of sudden being moved into a specialized role where she had no one." There is no reason to maintain the fiction that so long as one remains an employee, the employee may speak on behalf of the employer—especially where there is evidence that the employee has been demoted, disciplined, or placed on probation as a prelude to termination, or that the employee is preparing to resign or

FED. R. EVID. 801 advisory committee's note to 1997 amendment. "The Advisory Committee believes it appropriate to treat analogously preliminary questions relating to the declarant's authority . . . and the agency or employment relationship and scope thereof under subdivision (D)." *Id.*

may have an adverse litigation position with respect to the corporation by, for example, filing a complaint with the EEOC. In these contexts, the employer and employees may be adversaries. *See Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 622–23 (7th Cir. 2003) (statement in letter of resignation was not admissible; employee "was acting not only independently of [his employer] but also as its adversary"); *United States v. Summers*, 598 F.2d 450, 459 (5th Cir. 1979) (agent's statements could not be attributed to principal after the agent began cooperating with the FBI; "[the agent] could not be working for both the FBI and [the principal] at the same time"); *SEC v. Geon Indus., Inc.*, 531 F.2d 39, 43 n.3 (2d Cir. 1976) (suspended employee's testimony was properly excluded under Rule 801(d)(2)(D); employee and employer were "potential defendants [who] might have conflicting litigating positions").

The district court didn't hold that L.H.'s statement could not be admitted under Rule 801, only that it would not be admitted without some explanation for why L.H. could speak for Frontier in April 2013. *See* 5 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 801.33[2][c] (Matthew Bender 2d ed. 1997 & supp. 2019) (stating that "the decisionmaking authority of the declarant to hire, fire, promote or demote may be critical in employment cases" and that "the declarant must be among the persons who made the employment decisions in question"—or at least have "the ability to influence the personnel decision in question"—"for his or her statements about those decision to qualify as having been made within the scope of employment"). That was a perfectly reasonable decision. Without some foundation, some additional explanation, L.H.'s April 2013 statement was not within the scope of her employment when she uttered it just because she had once

had a supervisory position and was still employed in some capacity. The district court was right to be suspicious of the statement, and it was Weil's burden to lay that foundation. *See Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (party laid a sufficient foundation to admit email against employer by showing sender was employed when she forwarded the email and the contents of the email were within the scope of her employment); *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002) (party failed to lay a foundation by merely stating declarant's job title without "provid[ing] any description of [his] job responsibilities" and without "show[ing] that [the] job duties had anything to do with" the matter at hand); *Oki Am., Inc. v. Microtech Int'l, Inc.*, 872 F.2d 312, 314 (9th Cir. 1989) (party failed to lay a foundation where declarant "knew nothing" about the contracts at issue); *Breneman*, 799 F.2d at 473 (party failed to lay a foundation showing that declarants "were involved in" her discharge at all).

A decision from the Eleventh Circuit is nearly on all fours with this case and demonstrates the reading of Rule 801(d)(2)(D) I would favor. In *Kidd v. Mando American Corp.*, 731 F.3d 1196 (11th Cir. 2013), Leanne Kidd, a white female, was an accountant at Mando American Corporation, a Korean-owned company. When Kidd's immediate supervisor, the assistant accounting manager, left the company, Kidd assumed his responsibilities and indicated that she wished to be considered for the permanent position. B.J. Cheong, the accounting manager, told her he would get her promoted. Cheong and Mando's president, Tae Kwak, ultimately interviewed only one candidate for the permanent position, B.W. Seo, a Korean male. Talking with one of Mando's HR managers, Jerry Rolison, Kidd learned that Rolison had shown Cheong and Kwak four resumes from

qualified American candidates, but they refused to consider an American candidate. Kidd resigned and filed suit, claiming that Mando's failure to promote her violated Title VII. *Id.* at 1200–01. Agreeing with the district court, the court of appeals found that Kidd made out a prima facie case of failure to promote and that Mando offered a race-neutral reason for hiring the sole candidate it interviewed—Seo had more auditing experience. *Id.* at 1204–05. The burden then shifted to Kidd to show that Mando's explanation was pretextual. *Id.* at 1205–06. As the Eleventh Circuit explained, "The potentially strongest circumstantial evidence for Kidd is her testimony that Rolison informed her that Kwak and Cheong 'refused to even consider an American candidate' for the assistant accounting manager job." *Id.* at 1207; *see also id.* at 1208 (the evidentiary question was "outcome determinative" as to whether Kidd's case could proceed to trial).

The problem for Kidd was that "the facts surrounding Rolison's alleged remark [were] unclear . . . . If Kidd seeks to introduce Rolison's alleged remark under Rule 801(d)(2)(D), she needs to show that Rolison participated—at least to some extent—in Mando's decision to hire Seo and not promote Kidd." *Id.* at 1208. On the one hand, Rolison was head of Mando's HR department, which suggested he might be authorized to talk about Mando's hiring practices; on the other hand, "Rolison was only tangentially involved in Mando's decision to hire Seo, and . . . the Mando decisionmakers didn't consult with Rolison regarding Seo's hire over other eligible candidates." *Id.* at 1208–09. The court made clear that Rule 801(d)(2)(D) does not mean that "a non-decisionmaker can never be considered an agent," but "to be considered an agent for purposes of Rule 801(d)(2)(D), the record needs to reflect 'some kind of participation in the

employment decision or policy of the employer.'" *Id.* at 1209 (quoting *Rowell*, 433 F.3d at 800).[8] Because it was "entirely unclear whether Rolison's alleged statement that the Mando decisionmakers 'refused to even consider an American candidate,' was based on something he observed or heard, or whether it was his own personal opinion," the court remanded to the district court to determine if Rolison's alleged statement was admissible. *Id.* at 1210–11; *but see id.* at 1212 (Wilson, J., concurring in part and dissenting part) (objecting that remand gave Kidd a "second opportunity"; Kidd had conceded that Rolison's comment was "his own perception").

As in *Kidd*, Weil needed to lay some foundation which would allow a district court to reach the conclusion that L.H. was involved in some way in the decision to promote Brown and not to promote Weil. He failed to do that, even admitting that L.H. was "not involved in the process." The district court faithfully followed our decisions and those from other circuits. Having construed Rule 801(d)(2)(D) correctly, it did

---

[8] *See Rowell*, 433 F.3d at 800–01 (there must be "some evidence that the statements reflected some kind of participation in the employment decision or policy of the employer"; statements by former supervisor that the company wanted "to keep the youth" was not admissible where there was "no evidence that [the declarant] was involved in the decisions of how to structure the reduction in force"); *see also Fairchild.*, 815 F.3d at 967 (Rule 801(d)(2)(D) "does not apply to an employee's statement concerning a termination decision when that employee had nothing to do with that decision," even where the employee was a managerial employee (quotation marks and citation omitted)); *Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009) ("For an agent's statement regarding an employment action to constitute an admission, she need not have been personally involved in that action, but her duties must encompass some responsibility related to the decision making process affecting the employment action" (quotation marks and citation omitted)).

not abuse its discretion in excluding Weil's statement as hearsay.

### III

Rule 801(d)(2)(D) is not so restrictive that it would limit party admissions to principals but is also not so generous as to allow employees to speak for their employers on matters that their employers had deliberately removed from the scope of their authority. The district court did not commit legal error in requiring Weil to lay a foundation defining the scope of L.H.'s authority.

I would affirm the judgment of the district court. I respectfully dissent.