NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAY 16 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| MARGARET SKIPPS, as personal representative for the estate of Alexander Reagan Ma'Alona, | No. 21-56184 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-10557-ODW-AGR |
| v. | MEMORANDUM* |
| ALEJANDRO N. MAYORKAS, Secretary, United States Department of Homeland Security Substituted for Chad Wolf, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted April 11, 2023
Pasadena, California

Before: BERZON, MILLER, and LEE, Circuit Judges.
Concurrence by Judge LEE.

Plaintiff Margaret Skipps, acting as personal representative for the estate of

Alexander Reagan Ma'alona, appeals the district court's summary judgment for

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Ma'alona's employer, the Transportation Security Administration (TSA), on a claim of discriminatory discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court.

We review a district court's grant of summary judgment de novo. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc). A moving party is entitled to summary judgment upon a showing that no genuine dispute of material fact exists and that the law supports judgment in the moving party's favor. *See* Fed. R. Civ. P. 56(a). At the summary judgment stage, we view the facts and reasonable inferences drawn from the facts in the nonmovant's favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–32 (9th Cir. 1987).

We may analyze Title VII claims under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *see also Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1002 (9th Cir. 2019). Under that three-step framework, Title VII claims are analyzed as follows: First, a plaintiff must establish a prima facie case of discrimination. *Weil*, 922 F.3d at 1002. The burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its adverse employment decision. *Id.* Finally, the plaintiff must then demonstrate that the employer's professed reason is a pretext for a true discriminatory motive. *Id.*

2

We assume without deciding that Skipps established a prima facie case of discrimination. The burden thus shifted to Ma'alona's employer to articulate a legitimate nondiscriminatory reason for its decision to discharge Ma'alona. Here, the employer met that burden by pointing to Ma'alona's failure to pass his annual proficiency assessment. Therefore, the burden shifted back to Skipps to produce evidence that this reason is pretextual.

Skipps failed to provide sufficient evidence that the employer's proffered reason for discharging Ma'alona was pretextual. To create a triable issue of fact on this issue, Skipps had to present either some direct evidence of the employer's discriminatory motive or "specific" and "substantial" indirect evidence that its reason for terminating Ma'alona was pretextual. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221–22 (9th Cir. 1998) (quoting *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996)). For example, evidence that comparator employees received more favorable treatment than the employee who experienced the adverse employment action can constitute evidence of pretext. *Weil*, 922 F.3d at 1004; *see also Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158–59 (9th Cir. 2010). But it "is not enough for employees to be in similar employment positions; rather, the [employee] and the comparator employee[s] must be 'similarly situated . . . in all material respects.'" *Weil*, 922 F.3d at 1004 (quoting *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)).

Here, Skipps' argument that the employer's reason for discharging Ma'alona was pretextual rests primarily on the fact that six other employees who also failed the annual proficiency assessment were not discharged.[1] Skipps contends that Ma'alona and those comparator employees were similar in all material respects because they were all subject to the same recertification requirements. But a review of the record demonstrates material differences between the comparators and Ma'alona.

First, four of the comparators were dual-function employees, not single-function employees like Ma'alona. The TSA's employment policies clearly distinguish between dual-function employees and single-function employees, providing different remedies to each if they fail the recertification process.[2] The four dual-function employees were not discharged because they were converted to single-function officers, a remedy unavailable to Ma'alona. Another comparator was not

---

[1] Skipps further argues that she has established pretext because the TSA deviated from its policies in discharging Ma'alona and because the TSA's explanation for his discharge was unworthy of credence. But Skipps' assertions about the TSA's purported policy deviations and inconsistent statements are either unsupported by the record or immaterial to the proffered reason for Ma'alona's discharge, i.e., his failure to pass the annual proficiency review.

[2] According to TSA policy, dual-function employees can be converted to single-function employees if they fail the annual proficiency assessment in one area but pass in the other. That reassignment option is not available to single-function employees like Ma'alona. Although the TSA had the option to retrain Ma'alona in the other function rather than discharge him, Ma'alona rejected that option in writing and does not, on appeal, maintain that he should have been retrained.

terminated at all; instead, that employee chose to retire. And the last comparator eventually passed the proficiency assessment after being given an extra chance to do so because the employee did not receive properly documented remediation before one of his test failures.

By contrast, Ma'alona received documented remediation after his failed attempts to pass the assessment, so he was not entitled to an additional attempt for that reason. And although Skipps alleges that the remediation provided did not accord with TSA policy, nowhere in her appellate briefs does she explain in what respect the remediation provided was improper.

Because Skipps failed to provide sufficient evidence that the employer's proffered reason for discharging Ma'alona was pretextual, Skipps' claim fails as a matter of law.

**AFFIRMED.**

*Margaret Skipps v. Alejandro Mayorkas*, 21-56184
LEE, Circuit Judge, concurring.

I write separately to highlight the potential ambiguity in our circuit's case law about the prima facie elements under the *McDonnell Douglas* framework for discriminatory-discharge claims.

In *McDonnell Douglas Corp. v. Green*, the Supreme Court held that a plaintiff must establish a prima facie case of race-based discrimination by showing "(i) that he belongs to a racial minority; (ii) that he applied and *was qualified for a job* for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. 792, 802 (1973) (emphasis added).

But it is "widely recognized that the [*McDonnell Douglas*] test is a flexible one," *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 n.17 (9th Cir. 2004) and that it is "adaptable to different factual situations," *Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1075 (9th Cir. 1986). For that reason, this court typically modifies the second prima facie element of the *McDonnell Douglas* framework in discriminatory-discharge cases. *Sumner v. San Diego Urb. League, Inc.*, 681 F.2d 1140, 1142 n.2 (9th Cir. 1982) (quoting *Douglas v. Anderson*, 656 F.2d 528, 532 (9th Cir. 1981)). Instead of requiring a plaintiff to show that he or she was "qualified" for the job (as in a failure-to-hire case), we held in *Sengupta v. Morrison Knudsen*

1

*Co.* that a plaintiff (in a discriminatory-discharge case) must show that he or she "was doing his job well enough to rule out the possibility that he was fired for inadequate job performance." 804 F.2d at 1075; *see also Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 672 (9th Cir. 1988).[1]

That distinction between a failure-to-hire claim and a discriminatory-discharge claim makes sense. Suppose a company seeks to hire a junior engineer who has a B.S. in engineering and at least two years' experience. In a failure-to-hire claim, it makes sense to see if a job candidate met those qualifications. But once someone has been hired, the employer is less concerned about the employee's qualifications and more focused on the employee's performance. So an employer might dismiss a "qualified" employee (who has a B.S. in engineering and two years' experience) if he or she fails to perform the job adequately. We thus have recognized—for the most part—that the second prima facie element of the *McDonnell Douglas* framework slightly differs, depending on whether the claim is based on a failure-to-hire or a firing.

---

[1] We have used slightly different language at times to describe the second prima facie element in discriminatory-discharge cases but we have largely focused on performance of the employee. *Compare Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 691 (9th Cir. 2017) (describing the second element as whether employee was "performing according to [their] employer's legitimate expectations") *with Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1003 (9th Cir. 2019) ("performing [their] job satisfactorily") *and Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) ("qualified for their positions *and* performing their jobs satisfactorily") (emphasis added).

But in some cases our circuit has used the "qualified" language for the second prima facie element even in discriminatory discharge cases. For example, the court in *Aragon v. Republic Silver State Disposal Inc.*, said that the employee only needs to show that he was qualified for the job because the prima facie showing under the *McDonnell Douglas* framework requires only a "minimal inference" of discrimination. 292 F.3d 654, 658–59 (9th Cir. 2002) (noting that the prima facie requirement is different from the "specific, substantial showing" of pretext that a plaintiff must make under the third stage of the *McDonnell Douglas* framework). *See also Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094 (9th Cir. 2005) (same).

Notably, none of our opinions appear to expressly recognize this split in authority. We need not resolve this intra-circuit split here because the Title VII claim fails, regardless of which prima facie standard applies, because Skipps failed to provide evidence showing that the employer's proffered reason for the discharge was pretextual. In a future case, we should clarify the standard for assessing the second prima facie element for a discriminatory-discharge claim under the *McDonnell Douglas* framework.

3